UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MICHAEL WALKER and NATHANIEL WALKER,
on behalf of themselves and all others similarly situated,

                            Plaintiffs,

           -against-

THE INTERFAITH NUTRITION NETWORK, INC.
and CHRISTIAN AGUILERA, in his individual and
professional capacities,

                         Defendants.
------------------------------------------------------------------X

**COMPLAINT**

**Docket No.: 14-CV-5419**

Jury Trial Demanded

       MICHAEL WALKER ("Plaintiff Michael Walker") and NATHANIEL WALKER

("Plaintiff Nathaniel Walker") (collectively as "Plaintiffs"), on behalf of themselves and all

others similarly situated ("FLSA Plaintiffs"), by and through their attorneys, BORRELLI &

ASSOCIATES, P.L.L.C., as and for their Complaint against THE INTERFAITH NUTRITION

NETWORK, INC. ("Defendant INN") and CHRISTIAN AGUILERA, in his individual and

professional capacities ("Defendant Aguilera") (collectively as "Defendants"), allege upon

knowledge as to themselves and their own actions and upon information and belief as to all other

matters as follows:

**NATURE OF THE CASE**

       1.      This is a civil action for damages and equitable relief based upon the Defendants'

violations of Plaintiffs' rights guaranteed to them by: (i) the overtime provisions of the Fair

Labor Standards Acts ("FLSA"), 29 U.S.C. § 207(a); (ii) the FLSA's minimum wage provisions,

29 U.S.C. § 206(a); (iii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL

§ 160; N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2; (iv) the NYLL's

1

minimum wage provisions, NYLL § 652(1); (v) the NYLL's requirement that employers pay wages to their employees pursuant to the terms of employment, NYLL §§ 190, 191 and 663(1); (vi) the NYLL's requirement that employers provide on each payday certain notices and wage statements to their employees containing specific categories of accurate information, NYLL § 195; and (vii) any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiffs, employees of Defendants' Facilities Department (the "Facilities Department"), bring the instant action because of Defendants' blatant violation of United States and New York State labor laws.  First, Defendants created an emergency beeper policy which required Plaintiffs to respond to a tenant's emergency page and fix the tenant's problem, regardless of when the page occurred or what Plaintiffs were doing at the time.  In doing so, Defendants violated the FLSA, the NYLL, and the NYCCRR, as they failed to pay their employees at any rate of pay, let alone their regular rates of pay, overtime rates of pay, or even the minimum wage rate, for the time they spent holding the beeper and for their travel time to and from an emergency page.  Second, Defendants surreptitiously and unjustifiably changed Plaintiffs' "punch in" and "punch out" times to exclude hours that Plaintiffs worked from their pay, thereby depriving them of their lawfully earned wages and also in violation of the FLSA, the NYLL, and the NYCCRR, as Defendants completely failed to pay Plaintiffs at any rate of pay, let alone their regular rates of pay, overtime rates of pay, or even the minimum wage rate for these hours worked.  Additionally, Defendants completely failed to provide Plaintiffs with proper wage statements containing specific categories of accurate information on each payday, as the NYLL requires.

3.      Defendants paid and treated all of their employees in this manner.

4.      Plaintiffs bring this lawsuit against Defendants pursuant to the collective action provisions of 29 U.S.C. § 216(b), on behalf of themselves and all other persons similarly situated during the applicable FLSA limitations period who suffered damages as a result of Defendants' violations of the FLSA.

## JURISDICTION AND VENUE

5.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et. seq*.  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all state law claims.

6.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1), as one or more of the Defendants reside within this judicial district, and pursuant to 28 U.S.C. § 1391(b)(2), as all actions comprising the claims for relief occurred within this judicial district.

## PARTIES

7.      At all relevant times herein, Plaintiff Michael Walker was a resident of the State of New York and was a "person" and an "employee" entitled to protection as defined by the FLSA, the NYLL, and the NYCCRR.

8.      At all relevant times herein, Plaintiff Nathaniel Walker was a resident of the State of New York and was a "person" and an "employee" entitled to protection as defined by the FLSA, the NYLL, and the NYCCRR.

9.      At all relevant times, Defendant INN was a not-for-profit corporation organized pursuant to 26 U.S.C. § 501(c)(3), with its principal place of business located at 211 Fulton Avenue, Hempstead, New York 11550.

10.     At all relevant times, Defendant Aguilera was the director of Defendant INN's Facilities Department.  Defendant Aguilera personally managed and oversaw the day-to-day

3

operations of the Facilities Department and he was responsible for all matters with respect to employees' rates and methods of pay and hours worked, including the punch in/out and beeper policies at issue herein.  Furthermore, Defendant Aguilera had the power to hire and fire, and he routinely used this power to hire and fire the Facilities Department's employees.

11.     At all relevant times, Defendants are "employers" and "persons" within the meaning of the FLSA, the NYLL, and the NYCCRR.  Additionally, Defendants' qualifying annual business exceeds $500,000 and Defendants are engaged in interstate commerce within the meaning of the FLSA as they use goods, equipment, and other materials in the course of their business, much of which originates in states other than New York, the combination of which subjects Defendants to the FLSA's minimum wage and overtime requirements as an enterprise. Furthermore, all of Defendants' employees, including Plaintiffs and the FLSA Plaintiffs, are individually engaged in interstate commerce as they all used goods that have been and continue to be moved in interstate commerce.  This independently subjects Defendants to the overtime and minimum wage requirements of the FLSA with respect to Plaintiffs and the FLSA Plaintiffs.

## COLLECTIVE ACTION ALLEGATIONS

12.     Plaintiffs seek to bring this suit to recover from Defendants' minimum wage, overtime compensation and liquidated damages under the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on their own behalf as well as on behalf of those in the following collective:

> Current and former employees of Defendants who, during the applicable FLSA limitations period, performed any work for Defendants as non-exempt employees who give consent to file a claim to recover damages for: (1) overtime compensation that is legally due to them for the time worked in excess of forty hours per week; and/or (2) minimum wages that are legally due to them ("FLSA Plaintiffs").

13.     Defendants treated Plaintiffs and all FLSA Plaintiffs similarly in that Plaintiffs and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were not paid the required minimum wage for all hours worked; (5) were required to work in excess of forty hours in a workweek; and (6) were not paid the required rate of one and one-half times their respective regular rates of pay for hours worked over forty in a workweek.

14.     At all relevant times, Defendants were aware of the requirement to pay Plaintiffs and all FLSA Plaintiffs at an amount equal to the minimum hourly required rate of pay per hour for all hours worked, as well as the rate of one and one-half times their respective rates of pay for all hours worked each workweek above forty, yet they purposefully chose not to do so.

15.     Defendants engaged in these practices to minimize overhead and labor costs and to maximize their profits.

16.     Thus, Plaintiffs and all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees minimum wage and overtime compensation for all hours worked per workweek, in violation of the FLSA.

## BACKGROUND FACTS

17.     Defendant INN is a 501(c)(3) corporation that operates soup kitchens, emergency shelters, and housing programs.

18.     Defendant INN's housing program is a large part of its operations.  Defendant INN's Long Term Housing Program consists of at least twenty-three housing units, all of which are located in New York.

19.     The locations of these housing units are as follows: Hempstead (16 housing units), Freeport (3 housing units), Uniondale (2 housing units), Roosevelt (1 housing unit), and Huntington (1 housing unit).

20.     Defendant INN's Facilities Department is mainly responsible for performing general maintenance work for Defendant INN's housing program.

21.     As noted above, Defendant Aguilera was, and still is, the director of the Facilities Department.

22.     As also noted above, as the director of the Facilities Department, Defendant Aguilera personally managed and oversaw the day-to-day operations of the INN's Facilities Department and he was responsible for all matters with respect to employees' rates and methods of pay and hours worked.  Furthermore, Defendant Aguilera had the power to hire and fire, and he routinely used this power to hire and fire the Facilities Department's employees.

23.     In order to respond to Defendants' tenants' problems with their housing units, Defendant Aguilera created an emergency beeper policy which violated the FLSA and the NYLL and which deprived Plaintiffs of their lawfully earned wages.

24.     Additionally, Defendant Aguilera surreptitiously and unjustifiably changed the hours that Plaintiffs worked, thereby also depriving Plaintiffs of their lawfully earned wages.

**Background Facts Relating to Plaintiff Michael Walker:**

25.     Plaintiff Michael Walker has worked for Defendants from December 2007 through the present day.

26.     In December 2007, Defendants hired Plaintiff Michael Walker on a per diem basis to perform general maintenance duties for their Facilities Department.  At this time, Plaintiff Michael Walker was making $14.00 per hour.

27.     In early 2008, Defendants asked Plaintiff Michael Walker to continue performing his general maintenance duties, but on a full time basis.  At this time, Defendants paid Plaintiff Michael Walker $15.00 per hour.

28.     Since early 2008, Defendants gave Plaintiff Michael Walker yearly raises based on his performance for that year.  Due to these yearly raises, Plaintiff Michael Walker's hourly rate went up by approximately forty cents per hour each year.

29.     While employed by Defendants, Plaintiff Michael Walker's normal work schedule was that he would work Mondays through Fridays, from 8:00 a.m. to 5:00 p.m., with a one-hour lunch break.  Accordingly, under only his normal schedule, Plaintiff Michael Walker was working at least forty hours per week, every week that he was employed by Defendants.

30.     During his normal work hours, Plaintiff Michael Walker's duties mainly consisted of performing general maintenance work for Defendants' housing programs, including responding to Defendants' tenants' problems with their housing units.

31.     In addition, as will be described in more detail below, outside of his normal 8:00 a.m. to 5:00 p.m. shift, Defendants oftentimes required Plaintiff Michael Walker to respond to emergency pages from Defendants' tenants and attempt to fix whatever problem they may have with their housing units.

32.     In late 2013, Defendant INN transferred Plaintiff Michael Walker from its Facilities Department to its Development Department.

33.     Since Defendants hired Plaintiff Michael Walker in 2007, and up until he transferred departments in late 2013, Plaintiff Michael Walker worked under the supervision of Defendant Aguilera.

**Background Facts Relating to Nathaniel Walker:**

34.     Plaintiff Nathaniel Walker has worked for Defendants from July 2007 through the present day.

35.     In July 2007, Defendants hired Plaintiff Nathaniel Walker to perform general maintenance duties for their Facilities Department.  At this time, Defendants paid Plaintiff Nathaniel Walker at a rate of $20.00 per hour.

36.     Additionally, Defendants gave Plaintiff Nathaniel Walker yearly raises based on his performance for that year.  Due to these yearly raises, Plaintiff Nathaniel Walker's hourly rate went up by approximately fifty-eight cents per hour each year.

37.     In or around 2010, Defendants promoted Plaintiff Nathaniel Walker to become the foreman for the Facilities Department.  Despite becoming a foreman, Plaintiff Nathaniel Walker's hourly rate of pay and yearly raises remained the same, and Defendants still paid Plaintiff Nathaniel Walker by the hour.

38.     While employed by Defendants, Plaintiff Nathaniel Walker's normal work schedule was that he would work Mondays through Fridays, from 8:00 a.m. to 5:00 p.m., with a one-hour lunch break.  Accordingly, under only his normal schedule, Plaintiff Nathaniel Walker was working at least forty hours per week every week that he was employed by Defendants.

39.     During his normal work hours, Plaintiff Nathaniel Walker's duties mainly consisted of performing general maintenance work for Defendants' housing programs, including responding to Defendants' tenants' emergencies and attempting to fix their problems.

40.     Furthermore, outside of his normal 8:00 a.m. to 5:00 p.m. shift, Defendants oftentimes required Plaintiff Nathaniel Walker to respond to emergency pages from Defendants' tenants and attempt to fix whatever problem they may have with their housing units.

41. Since Defendants hired Plaintiff Nathaniel Walker in 2007, and up to the present day, Plaintiff Nathaniel Walker worked under the supervision of Defendant Aguilera.

**Defendant Aguilera's Creation and Implementation of an Emergency Beeper Policy:**

42. Whenever one of Defendants' tenants complained about an issue with one of Defendants' housing units, such as a problem with the heat, a backed-up toilet, or a gas leak, Defendants would send over Plaintiffs, or one of their other maintenance employees, to fix the problem immediately.

43. If one of Defendants' tenants had an emergency that occurred during the Facilities Department's normal work hours, 8:00 a.m. to 5:00 p.m., one of the regularly-scheduled Facilities Department's employees would handle the problem.

44. In or around 2007, Defendant Aguilera created and instituted an emergency beeper program in order to respond to Defendants' tenant's demands that occurred outside of these normal work hours.

45. Under this program, Defendant Aguilera issued an emergency beeper to the Facilities Department's employees, including Plaintiffs and FLSA Plaintiffs. If one of Defendants' tenants had a problem with their housing unit, the tenant would call the emergency beeper, and a Facilities Department employee would appear almost immediately to fix the issue.

46. The beeper-holder was required to respond to any emergency page within thirty minutes, regardless of what time the holder received the page or what else he or she was doing at the time, by going to the site and attempting to fix the tenant's problem.

47. As such, beeper-holders would have to stay near Defendants' housing units, and they were not allowed to travel outside of a thirty-minute drive from Defendants' housing units while they were holding the beeper. Accordingly, beeper-holders were not able to enjoy normal

activities such as taking in a movie or going out to dinner with a friend, lest they receive an emergency page and have to leave early.  Finally, under no circumstance were beeper-holders allowed to drink alcohol, for obvious safety reasons.

48.     Most of these emergency pages came between 7:00 p.m. and 3:00 a.m., but many more occurred after 3:00 a.m.

49.     When the Facilities Department's employee answered the emergency page, that employee was supposed to get paid at his regular rate of pay for the travel time to and from the site and for the time he or she spent attempting to fix the problem.  If the response put the employee's hours over forty for a given workweek, the employee was supposed to get his or her statutorily-required overtime wages at one and one half times his or her regular rate of pay.

50.     In reality, Defendants only paid Plaintiffs for the time they spent attempting to fix the tenant's problem.

51.     Defendants refused to compensate Plaintiffs, at any rate of pay, let alone their regular or overtime rates of pay or even at the minimum wage rate of pay, for their travel time to and from Defendants' housing units.  Defendants also provided no compensation for the time Plaintiffs spent while they were "on call," while holding the beeper.

52.     For Plaintiff Michael Walker, one example of Defendants' unlawful beeper policy occurred in June 2009.

53.     Plaintiff Michael Walker held the beeper during the entire month of June 2009.

54.     During this month, Plaintiff Michael Walker's normal work schedule, not including the beeper, had him working at least forty hours each week, as he worked from at least 8:00 a.m. to 5:00 p.m., with a one-hour lunch break, five days a week.

55.     In addition to his normal work schedule, Plaintiff Michael Walker had to respond to at least two emergency pages, and it took him at least forty minutes to travel to and from Defendants' housing units every time he received an emergency page.

56.     Additionally, while holding the beeper, Plaintiff Michael Walker was on call twenty-four hours a day seven days a week, and he was expected to be able to respond to any emergency page within thirty minutes by going to the site and attempting to fix the tenant's problems.

57.     Defendants refused to compensate Plaintiff Michael Walker for the time he spent travelling to and from their housing units.

58.     Accordingly, Defendants failed to pay Plaintiff Michael Walker at any rate of pay, let alone his regular or overtimes rates of pay, or even at the minimum wage rate, for the at least five hours and twenty minutes of overtime that he worked during this month.

59.     In addition, during this time period, Defendants failed to compensate Plaintiff Michael Walker at any rate of pay, let alone his regular or overtime rates of pay, or even at the minimum wage rate, for each hour that he held the beeper outside of his normal work schedule, which Plaintiff Michael Walker held for the whole month.

60.     This one month period is indicative of the way that Defendants treated Plaintiff Michael Walker from 2007 up until he transferred departments in late 2013.

61.     For Plaintiff Nathaniel Walker, one example of Defendants' unlawful beeper policy occurred during the week of April 12, 2010 to April 18, 2010.

62.     During this week, Plaintiff Nathaniel Walker's normal work schedule, not including the beeper, had him working at least forty hours each week, as he worked from at least 8:00 a.m. to 5:00 p.m., with a one-hour lunch break, five days a week.

63.     Also, during this week, Plaintiff Nathaniel Walker had to respond to at least two emergency pages, and it took him at least forty minutes to travel to and from Defendants' housing units every time he received an emergency page.

64.     Additionally, while holding the beeper, Plaintiff Nathaniel Walker was on call twenty-four hours a day seven days a week, and he was expected to be able to respond to any emergency page within thirty minutes by going to the site and attempting to fix the tenant's problems.

65.     Defendants, however, refused to compensate Plaintiff Nathaniel Walker for the time he spent travelling to and from their housing units.

66.     Accordingly, Defendants failed to pay Plaintiff Nathaniel Walker at any rate of pay, let alone his regular or overtime rates of pay, or even at the minimum wage rate, for the at least one hour and twenty minutes of overtime hours that he worked during this period.

67.     In addition, during this time period Defendants failed to compensate Plaintiff Nathaniel Walker, at any rate of pay, let alone his regular or overtime rates of pay, or even at the minimum wage rate, for each hour that he held the beeper outside of his normal work schedule, which Plaintiff Nathaniel Walker held for the whole week.

68.     This week is indicative of the way that Defendants treated Plaintiff Nathaniel Walker from 2007 up until May 2010.

**Defendant Aguilera Changes the Emergency Beeper Policy in May 2010.**

69.     In May 2010, Defendants supplemented their beeper policy, changing how it applied to Plaintiff Nathaniel Walker.

70.     Specifically, Defendants added another emergency beeper to their pre-existing policy, which, at all times, was held exclusively by either Defendant Aguilera or Plaintiff Nathaniel Walker.

71.     Plaintiff Nathaniel Walker held this emergency beeper for two weeks out of every month.

72.     During the weekdays, Plaintiff Nathaniel Walker had the option of responding to an emergency page that he received outside of his normal shift hours.  If he chose not to physically respond, he was required to call Defendant Aguilera within fifteen minutes of receiving the page, telling Defendant Aguilera that he was not going to physically respond, at which point Defendant Aguilera would then have to respond.

73.     Plaintiff Nathaniel Walker physically responded to the vast majority of the emergency pages he received.

74.     During the weekends, however, Plaintiff Nathaniel Walker was required to physically respond to an emergency page, and he was subject to disciplinary action if he failed to respond.

75.     Given the increased burden placed on Plaintiff Nathaniel Walker during the two weekends per month that he held the emergency pager, Defendant Aguilera paid him by the hour for holding the beeper.

76.     Defendant Aguilera, however, refused to pay him at his regular rate of pay, as calculated by his rate of pay for his normal eight-to-five shift, or at one and one-half times his regular rate of pay for any hours in which holding the emergency beeper put him over forty hours worked in a given workweek.

77.     Instead, Defendant Aguilera arbitrarily decided to pay him a flat rate of $10.00 per hour for each hour that he held the beeper.

78.     If Plaintiff Nathaniel Walker was called back to work, either on the weekdays or on the weekends in which he was holding the beeper, Defendant Aguilera paid him at either his regular rate of pay, i.e. his rate of pay during his normal eight-to-five shift, or at one and one-half times his regular rate of pay when his hours exceed forty in a given workweek.

79.     Defendant Aguilera, however, still refused to compensate Plaintiff Nathaniel Walker for his travel time to and from Defendants' housing units during this time period.

80.     For Plaintiff Nathaniel Walker, one example of Defendants' unlawful beeper policy during this revised beeper policy occurred during the weeks of November 19, 2012 to November 25, 2012 and December 3, 2012 to December 9, 2012.

81.     During these two weeks, Plaintiff Nathaniel Walker's normal work schedule, not including the beeper, had him working at least forty hours each week, as he worked from at least 8:00 a.m. to 5:00 p.m., with a one-hour lunch break, five days a week.

82.     In addition, during these two weeks, Plaintiff Nathaniel Walker had to respond to at least two emergency pages per week, and it took him at least forty minutes to travel to and from Defendants' housing units every time he received an emergency page.

83.     Defendants, however, refused to compensate Plaintiff Nathaniel Walker for the time he spent travelling to and from their housing units.

84.     Accordingly, Defendants failed to pay Plaintiff Nathaniel Walker the required overtime wages calculated at one and one-half times his regular rate of pay during his normal eight-to-five shift for the, at least, two hours and forty minutes of overtime hours that he worked during these two weeks.

85.     In addition, during this time period, Defendants failed to pay Plaintiff Nathaniel Walker his required wages, calculated at either his regular or overtime rates of pay, for each hour in which he held the beeper outside of his normal work schedule.

86.     These two weeks are indicative of the way that Defendants treated Plaintiff Nathaniel Walker during this revised beeper policy.

**Defendant Aguilera Unjustifiably Changes His Employees' "Punch In" and "Punch Out" Times.**

87.     In or around 2008, the Facilities Department began to use a "punch clock" system to track the number of hours each employee worked.

88.     Under this system, Defendants expected the Facilities Department's employees to punch in when they started working and punch out when they stopped working.

89.     Starting in early 2010, and continuing to the present day, Defendant Aguilera began changing his employees' punch-in and punch-out times.  Specifically, Defendant Aguilera would change his employees' punch-in times to 8:00 a.m. and their punch out times to 5:00 p.m., regardless of what time they actually came in and started working and what time they left.

90.     Defendant Aguilera changed his employees punch in/out times despite the fact that he was well aware that his employees were coming and working earlier than 8:00 a.m. and that they were staying later than 5:00 p.m. to finish their work and despite the fact that he acquiesced in the benefits of their extra work.

91.     As noted above, Plaintiffs' normal shifts were from 8:00 a.m. to 5:00 p.m.

92.     For Plaintiff Michael Walker, one example of Defendant Aguilera's unlawful policy of changing his employees' punch-in and punch-out times occurred during the weeks of February 4, 2013 to February 18, 2013.

93.     During these two weeks, Plaintiff Michael Walker showed up at work and actually began working at 7:30 a.m. each day, and he punched-in at this time.

94.     Additionally, during these two weeks, Plaintiff Michael Walker continued working until at least 5:15 p.m. on at least four separate occasions, and he punched-out at this time.

95.     However, Defendant Aguilera unjustifiably changed Plaintiff Michael Walker's punch-in and punch-out times to 8:00 a.m. and 5:00 p.m. respectively.

96.     In doing so, Defendant Aguilera completely failed to pay Plaintiff Michael Walker at any rate of pay, let alone his regular or overtime rates of pay, or even at the minimum wage rate, for the at least six hours of overtime that he worked during this time period.

97.     This two week period is indicative of the way Defendant Aguilera changed Plaintiff's Michael Walker's punch-in and punch-out times from early 2010 up until he transferred departments in late 2013.

98.     For Nathaniel Walker, one example of Defendant Aguilera's unlawful policy of changing his employees' punch-in and punch-out times occurred during the weeks of April 1, 2013 to April 15, 2013.

99.     During these two weeks, Plaintiff Nathaniel Walker showed up at work and actually began working at 7:40 a.m. on at least four separate occasions, and he punched-in at this time.

100.    Additionally, during these two weeks, Plaintiff Nathaniel Walker continued working until at least 5:15 p.m. on at least four separate occasions, and he punched-out at this time.

101.    However, Defendant Aguilera unjustifiably changed Plaintiff Nathaniel Walker's punch-in and punch-out times to 8:00 a.m. and 5:00 p.m. respectively.

102.    In doing so, Defendant Aguilera completely failed to pay Plaintiff Nathaniel Walker at any rate of pay, let alone his regular or overtime rates of pay, or even at the minimum wage rate of pay, for the at least two hours and twenty minutes of overtime that he worked during this time period.

103.    This two week period is indicative of the way Defendant Aguilera changed Plaintiff's Nathaniel Walker's punch-in and punch-out times from early 2010 up until the present.

104.    Finally, Defendants willfully failed to provide Plaintiffs with proper wages statements, as required under the NYLL.  Defendants paid Plaintiffs every two weeks.  However, they completely failed to furnish Plaintiffs with a statement that accurately listed their total hours worked on each payday.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the FLSA*

105.    Plaintiffs and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

106.    29 U.S.C. § 207 requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for any hours worked exceeding forty in a workweek.

107.    As described above, Defendants are employers within the meaning of the FLSA while Plaintiffs and FLSA Plaintiffs are employees within the meaning of the FLSA.

108.     Plaintiffs and FLSA Plaintiffs worked in excess of forty hours per week, yet Defendants failed to compensate Plaintiffs and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

109.     Defendants willfully violated the FLSA.

110.     Plaintiffs and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective standard rates of pay or the minimum wage rate, whichever is higher.

111.     Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violation of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Minimum Wages under the FLSA*

112.     Plaintiffs and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

113.     29 U.S.C. § 206 requires employers to compensate their employees at a rate not less than the federally-mandated minimum wage rate.

114.     Defendants failed to compensate Plaintiffs and FLSA Plaintiffs in accordance with the FLSA's minimum wage provisions.

115.     Defendants willfully violated the FLSA.

116.     At the least, Plaintiffs and FLSA Plaintiffs are entitled to pay at the minimum wage rate for all hours worked per week.

117.     Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violation of the FLSA's minimum wage provisions.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the NYLL and the NYCCRR*

118.    Plaintiffs and any FLSA Plaintiff who opts-in to this action repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

119.    NYLL § 160 and 12 NYCCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for any hours worked exceeding forty in a workweek.

120.    As described above, Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiffs and any FLSA Plaintiffs are employees within the meaning of the NYLL and the NYCCRR.

121.    Plaintiffs and any FLSA Plaintiffs worked in excess of forty hours per week, yet Defendants failed to compensate Plaintiffs and FLSA Plaintiffs in accordance with the NYLL's and the NYCCRR's overtime provisions.

122.    Defendants willfully violated the NYLL and the NYCCRR.

123.    Plaintiffs and any FLSA Plaintiffs are entitled to their overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective standard rates of pay, or at the minimum wage rate, whichever is higher.

124.    Plaintiffs and any FLSA Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violation of the NYLL's and NYCCRR's overtime provisions.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Minimum Wages under the NYLL and the NYCCRR*

125.    Plaintiffs and any FLSA Plaintiff who opts-in to this action repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

126.    NYLL § 652 and 12 NYCCRR § 141-1.3 require employers to compensate their employees at a rate not less than $7.15 an hour on and after January 1, 2007; $7.25 an hour on and after July 24, 2009; and $8.00 an hour on and after December 31, 2013.

127.    Defendants failed to compensate Plaintiffs and any FLSA Plaintiffs in accordance with the NYLL's and NYCCRR's minimum wage provisions.

128.    Defendants willfully violated the NYLL and the NYCCRR.

129.    At the least, Plaintiffs and any FLSA Plaintiffs are entitled to pay at the minimum wage rate for all hours worked per week.

130.    Plaintiffs and any FLSA Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violation of the NYLL's and NYCCRR's minimum wage provisions.

## FIFTH CLAIM OF RELIEF AGAINST DEFENDANTS
### *Failure to Pay Wages in Violation of the NYLL*

131.    Plaintiffs and any FLSA Plaintiff who opts-in to this action repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

132.    NYLL §§ 190, 191, and 663(1) require that employers pay wages to their employees in accordance with the agreed terms of employment.

133.   Defendants failed to compensate Plaintiffs and any FLSA Plaintiffs at their regular rates of pay for each hour that they worked in accordance with their terms of employment.

134.   Defendants' actions were in willful violation of the NYLL.

135.   Plaintiffs and any FLSA Plaintiffs are entitled to recover, at their respective regular rates of pay, for all hours that they worked for Defendants but for which they were not compensated.

136.   Plaintiffs and any FLSA Plaintiffs are also entitled to liquidated damages, interest, and attorney's fees for Defendants' failure to pay Plaintiffs and any FLSA Plaintiffs their wages in accordance with the agreed terms of employment.

### SIXTH CLAIM FOR RELEIF AGAINST DEFENDANTS
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

137.   Plaintiffs and any FLSA Plaintiff who opts in to this action repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

138.   NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

139.   As described above, Defendants willfully failed to provide Plaintiffs and any FLSA Plaintiffs with accurate wage statements containing the criteria required under the NYLL.

140.   Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs and any FLSA Plaintiffs in the amount of $100 for each failure of this sort.

## DEMAND FOR A JURY TRIAL

141.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs and the FLSA Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and the FLSA Plaintiffs demand judgment against the Defendants as follows:

a.    A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws.

b.    Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.    An order restraining Defendants from any retaliation against any individual for participating in this lawsuit in any form;

d.    Designation of this action as an FLSA collective action on behalf of Plaintiffs and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.    All damages that Plaintiffs and the FLSA Plaintiffs have sustained as a result of the Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiffs and the FLSA Plaintiffs would have received but for the Defendants' unlawful payment practices;

f.      Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

g.      Awarding Plaintiffs and the FLSA Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs, and an award of a service payment to Plaintiffs;

h.      Designation of Plaintiffs and their counsel as collective action representatives under the FLSA;

i.      Pre-judgment and post-judgment interest, as provided by law;

j.      Granting Plaintiffs and the FLSA Plaintiffs other and further relief as this Court finds necessary and proper.

Dated:  September 16, 2014
        Great Neck, New York

                          Respectfully submitted,
                          BORRELLI & ASSOCIATES, P.L.L.C.
                          *Attorneys for Plaintiffs*
                          1010 Northern Boulevard, Suite 328
                          Great Neck, New York 11021
                          Tel. (516) 248-5550
                          Fax. (516) 248-6027

                  By:      _____/s/*Todd Dickerson*_____
                          TODD DICKERSON, ESQ (TD 0372)
                          ALEXANDER T. COLEMAN. ESQ (AC 8151)
                          MICHAEL J. BORRELLI, ESQ (MB 8533)