**UNPUBLISHED CASES**

1. *Casci v. Nat'l Fin. Network, LLC*, 13 CV 1669 (DRH)(GHRB), 2015 U.S. Dist. LEXIS 1500 (E.D.N.Y. Jan. 7, 2015)

2. *Villafana v. Feeding S. Fla., Inc.*, 13-60760-CIV-COHN/SELTZER, 2013 U.S. Dist. LEXIS 82603 (S.D. Fla. June 12, 2013)

3. *Reagor v. Okmulgee Cnty. Family Res. Ctr., Inc.*, No. 11-7070, 2012 U.S. App. LEXIS 23368 (10th Cir. Nov. 14, 2012)

4. *Apple v. Atl. Yards Dev. Co., LLC*, 11-CV-5550 (JG), 2014 U.S. Dist. LEXIS 152053 (E.D.N.Y. Oct. 27, 2014)

5. *Lussi v. Design-Build & Eng'g, Inc.*, 09-23446-CIV-SEITZ/O'SULLIVAN, 2010 U.S. Dist. LEXIS 38780 (S.D. Fla. April 20, 2010)

6. *Perez v. Brands Mart Serv. Corp.*, 10-61203-CIV-O'SULLIVAN, 2011 U.S. Dist. LEXIS 82708 (S.D. Fla. July 28, 2011)

7. *Steiner-Out v. Lone Palm Golf Club, LLC*, 8:10-cv-2248-T-24 TBM, 2010 U.S. Dist. LEXIS 115415 (M.D. Fla. Oct. 28, 2010)



**NICHOLAS CASCI, individually and on behalf of all other persons similarly situated, Plaintiff, - against - NATIONAL FINANCIAL NETWORK, LLC and/or any other entities affiliated with or controlled by NATIONAL FINANCIAL NETWORK, LLC, Defendant.**

**13 CV 1669 (DRH) (GRB)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*2015 U.S. Dist. LEXIS 1500*

**January 7, 2015, Decided**
**January 7, 2015, Filed**

**COUNSEL:** [*1] For Plaintiff: Daniel Harris Markowitz, Esq., Jeffrey Kevin Brown, Esq., Michael Alexander Tompkins, Esq., LEEDS BROWN LAW, P.C., Carle Place, NY.

For Plaintiff: Lloyd Robert Ambinder, Esq., VIRGINIA & AMBINDER LLP, New Yor, NY.

For Defendant: Melissa Jill Osipoff, Esq., OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., New York, NY.

For Defendant: Edward Cerasia, II, Esq., CERASIA & DEL REY-CONE LLP, New York, NY.

**JUDGES:** Denis R. Hurley, Senior United States District Judge.

**OPINION BY:** Denis R. Hurley

**OPINION**

**MEMORANDUM AND ORDER**

    HURLEY, Senior District Judge:

Plaintiff Nicholas Casci ("plaintiff")[1] commenced this action against defendant National Financial Network, LLC ("defendant") asserting claims of unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), *29 U.S.C. §§ 206* and *216(b)*, and New York Labor Laws ("NYLL").

    1  Although plaintiff brings this action on behalf of a proposed collective class, to date, no motion for class certification has been made.

Presently before the Court is Defendant's motion to dismiss the complaint pursuant to *Federal Rule of Civil Procedure ("Rule") 12(b)(6)*. Defendant contends that the original complaint filed in this action "is devoid of any factual allegations supporting the assertions that [defendant] violated the FLSA or NYLL." [*2]  (Def.'s Mem. in Supp. at 1.) Plaintiff argues in response that "[t]he Complaint clearly proffers specific factual allegations more than sufficient to satisfy the pleading requirements," (Pl.'s Mem. in Opp'n at 1), but asks that if the Court finds any of the claims to be insufficiently plead, he be permitted to file an amended complaint, which he has submitted along with his opposition papers and labeled Proposed Amended Complaint ("PAC"). For the foregoing reasons, the Court dismisses plaintiff's overtime and minimum wage claims and denies plaintiff's request to file the PAC.

## BACKGROUND

From approximately December 2009 to May 2010, defendant employed plaintiff as a Field Representative in New York. Plaintiff's job responsibilities included "making 'cold calls' to market and sell financial and insurance products, and engaging in natural market solicitation." (PAC ¶ 28.) Plaintiff claims that defendant wrongfully classified him "as exempt from minimum wages and overtime compensation." (*Id.* ¶ 3.) Plaintiff "typically worked thirty-four to thirty-nine (34-39) hours per week, although occasionally he worked in excess of forty (40) hours per week, without receiving overtime compensation." (*Id.* [*3] ¶ 28.) Plaintiff further alleges that he was "required to perform work for and on behalf of Defendants without compensation,"[2] and was "paid zero (0) dollars per hour." (*Id.* ¶ 29.)

> 2   Although it is unclear, presumably plaintiff is referring to both uncompensated regular and over-time hours.

## DISCUSSION

### A. *Rule 12(b)(6)* Standard

*Rule 8(a)* provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *FED. R. CIV. P. 8(a)(2).* In recent years, the Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under *Rule 12(b)(6)*.

First, in *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*, the Court disavowed the well-known statement in *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly, 550 U.S. at 561.* Instead, to survive a motion to dismiss under *Twombly,* a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a *Rule 12(b)(6)* motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more [*4]

> than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id. at 555* (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*, the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id. at 679.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id. at 678 (citing Twombly, 550 U.S. at 555)*.

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id. at 679.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to [*5] draw on its judicial experience and common sense." *Id.* The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id. at 678* (quoting and citing *Twombly, 550 U.S. at*

*556-57*) (internal citations omitted).

In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--that the pleader is entitled to relief." *Id. at 679* (quoting *FED. R. CIV. P. 8(a)(2)*).

## B. Plaintiff's Overtime Claims

Pursuant to *§ 207(a)(1)* of the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half [*6] times the regular rate at which he is employed." Defendant argues that plaintiff has not adequately alleged an FLSA overtime violation because he "fails to set forth any specific allegations supporting the hours he claims to have worked." (Def.'s Mem. in Supp. at 4.) The plaintiff responds that he has sufficiently alleged an unpaid overtime claim. (Pl.'s Mem. in Opp'n at 6.)

The Court's analysis of whether plaintiff has stated a plausible overtime claim is focused on three recent Second Circuit decisions dismissing FLSA claims: *Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106 (2d Cir. 2013)*, *Nakahata v. New York-Presbyterian Healthcare System, Inc., 723 F.3d 192 (2d Cir. 2013)*, and *DeJesus v. HF Management Services, LLC, 726 F.3d 85 (2d Cir. 2013)*. In *Lundy*, the court held that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek, as well as some uncompensated time in excess of the 40 hours." *Lundy, 711 F.3d at 114*. Moreover, in *Lundy*, the Court dismissed plaintiff's overtime claims based on allegations that she "typically" worked 37.5 hours per week in addition to uncompensated meal breaks, time before and after shifts, and trainings "which could theoretically put her over the 40-hour mark in one or another unspecified week (or weeks)" because such allegations "suppl[ied] nothing but low-octane fuel for speculation, not the plausible claim that is required." [*7] *Id. at 114-115*. The Second Circuit subsequently held in *Nakahata* that in order to plead a plausible FLSA claim, plaintiffs must provide "sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *723 F.3d at 201*. The Circuit's most recent decision, *DeJesus*, further clarified the standard in stating that *Lundy* "declined to make an

approximation of overtime hours a necessity in all cases," even though such an approximation might "help draw a plaintiff's claim closer to plausibility." *DeJesus, 726 F.3d at 88* (internal quotation marks and citations omitted). Still, *DeJesus* dismissed plaintiff's claim because "[s]he did not estimate her hours in any or all weeks or provide any other factual context or content." *Id. at 89*. "Indeed, her complaint was devoid of any numbers to consider beyond those plucked from the statute. She alleged only that in 'some or all weeks' she worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation." *Id.* Furthermore, the court explained that "*Lundy*'s requirement that plaintiffs must allege overtime without compensation in a 'given' workweek, *711 F.3d at 114*, was not an invitation to provide an all-purpose [*8] pleading template alleging overtime in 'some or all workweeks.' It was designed to require plaintiffs to provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'" *Id. at 90* (quoting *Twombly, 550 U.S. at 570*).

Here neither the allegations in the original Complaint nor plaintiff's PAC meet the standard set forth in the recent Second Circuit cases cited above. The Complaint vaguely alleges that plaintiff "worked in excess of forty (40) hours in certain weeks" (Compl. ¶ 31) and is devoid of any detailed factual information from which the Court could reasonably infer that he worked more than forty hours in any "given" work week. Similarly, the PAC's allegations that plaintiff "occasionally" or "sometimes" worked overtime do nothing more than conform to the "all-purpose pleading template alleging overtime in some" workweeks forbidden by *DeJesus*. Moreover, plaintiff's allegations do not demonstrate his efforts to comply with the Second Circuit's direction that "plaintiffs draw on [memory and experience] in providing complaints with sufficiently developed factual allegations." *DeJesus, 726 F.3d at 90*. Given that the plaintiff has failed to allege sufficient facts that would "nudge" his claim from conceivable [*9] to plausible, plaintiff's FLSA and NYLL overtime claims are dismissed and permitting plaintiff to file overtime claims as stated in the PAC would be futile.[3]

3    "In light of the fact that [t]he relevant portions of New York Labor Law do not diverge from the requirements of the FLSA, [the Court's] conclusions . . . about the FLSA allegations appl[y] equally to [the NYLL] state law claims." *DeJesus, 726 F.3d at 89 n. 5* (internal quotation

marks and citations omitted).

### C. Plaintiff's Minimum Wage Claims

The FLSA requires employers to pay employees a minimum wage of $7.25 per hour. *29 U.S.C. § 206(a)(1)*. Similarly, *NYLL § 652* sets forth the minimum wage rate for New York State. "For minimum-wage recovery under the FLSA, the pertinent question is whether the amount of compensation received by an employee results in a straight-time hourly rate that is less than the applicable federal minimum wage." *Chuchuca v. Creative Customs Cabinets, Inc., 2014 U.S. Dist. LEXIS 164846, 2014 WL 6674583, at *9 n. 10 (E.D.N.Y. Nov. 25, 2014)* (internal quotation marks and citations omitted). Furthermore, "[t]o state a FLSA minimum wage claim, it is sufficient for plaintiff to allege facts about her salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period." *Tackie v. Keff Enterprises LLC, 2014 U.S. Dist. LEXIS 130148, 2014 WL 4626229, at *3 (S.D.N.Y. Sept. 16, 2014)* (citing *Zhong v. August August Corp., 498 F. Supp 2d 625, 629 (S.D.N.Y. 2007)*. Here, although plaintiff alleges that he typically worked 37.5 hours per week [*10] and that he did receive some "wages" (PAC ¶ 32), neither the original Complaint nor the PAC contains facts concerning the amount of compensation plaintiff actually received. As a result, it is impossible to infer from the allegations that plaintiff's compensation resulted in a straight time hourly rate below the minimum wage. Accordingly, plaintiff's FLSA and NYLL minimum wage claims are dismissed, see *Tackie, 2014 U.S. Dist. LEXIS 130148, 2014 WL 4626229 at *3* (analyzing FLSA and NYLL minimum wage claims similarly), and his request to file the minimum wage claims as stated in the PAC is denied as futile.

### CONCLUSION

For the foregoing reasons, plaintiff's claims are dismissed and his request to file the PAC is denied.

**SO ORDERED**.

Dated: Central Islip, New York

January 7, 2015

/s/ Denis R. Hurley

United States District Judge



SANDRA I. VILLAFANA, and other similarly-situated individuals, Plaintiff, v. FEEDING SOUTH FLORIDA, INC., Defendant.

### 13-60760-CIV-COHN/SELTZER

## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

*2013 U.S. Dist. LEXIS 82603*

**June 12, 2013, Decided**
**June 12, 2013, Entered on Docket**

**COUNSEL:** [*1] For Sandra Villafana, and other similarly-situated individuals, Plaintiff: Brody Max Shulman, Anthony Maximillien Georges-Pierre, Remer & Georges-Pierre, PLLC, Miami, FL.

For Feeding South Florida, Inc, Defendant: Cheryl Lorraine Wilke, LEAD ATTORNEY, Hinshaw & Culbertson LLP, Fort Lauderdale, FL; Daniel Albert Krawiec, II, Fort Lauderdale, FL.

**JUDGES:** JAMES I. COHN, United States District Judge.

**OPINION BY:** JAMES I. COHN

**OPINION**

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint [DE 22]. The Court has considered the motion, Plaintiff's response [DE 25], Defendant's reply [DE 26], the record in this case, and is otherwise advised in the premises.

## I. BACKGROUND

Defendant, Feeding South Florida, Inc., is a 501(c)(3), Florida nonprofit corporation that works to ameliorate hunger by providing grocery products to a network of other nonprofit organizations. [1] From April 2, 2010, through June 15, 2012, Plaintiff Sandra I. Villafana worked for Defendant as a sorter at Defendant's facility. DE 16 ¶¶ 10-11. Plaintiff alleges that, while working for Defendant, she started working at 7:30 a.m. each morning, [*2] but was not compensated for work performed prior to 8:00 a.m. Id. ¶ 10. Therefore, Plaintiff claims that she was not paid the minimum wage for those hours.

1   Defendant's nonprofit status is not pleaded in the Amended Complaint. However, in the instant motion, Defendant asks the Court to take judicial notice of its registration as a nonprofit entity, and Plaintiff does not object. As Plaintiff notes, a court may take judicial notice of certain facts not contained in the pleadings without converting a motion to dismiss into a motion for summary judgment. See *Universal Express, Inc. v. United States SEC, 177 F. App'x 52, 53 (11th Cir. 2006)*. This includes facts contained in the public record. See *id. at 53-54*. Here, because Defendant is registered as a nonprofit with the Florida Division of Corporations, the Court will take judicial notice of this fact.

Case 2:14-cv-05419-DRH-GXB   Document 21-1   Filed 02/03/15   Page 9 of 52 PageID #: 279

Page 2
2013 U.S. Dist. LEXIS 82603, *2

On April 2, 2013, Plaintiff brought this action against Defendant, alleging violations of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 207*, for failure to pay minimum wage. See DE 1. On April 30, 2013, Defendant filed a Motion to Dismiss Plaintiff's Complaint [DE 11] ("first motion to dismiss"), asserting that Plaintiff had failed to [*3] state a claim for relief. Shortly thereafter, on May 2, 2013, Plaintiff filed an Amended Complaint [DE 16] and, accordingly, the Court denied as moot the first motion to dismiss. See DE 20. In the Amended Complaint, Plaintiff retains her FLSA claim (Count I), and adds an additional claim (Count II) for violation of the Florida Minimum Wage Act ("FMWA"), *Florida Statutes § 448.110*. In the instant motion, Defendant moves to dismiss both counts of the Amended Complaint for failure to state a claim. Plaintiff opposes the motion.

## II. MOTION TO DISMISS STANDARD

Under *Federal Rule of Civil Procedure 12(b)(6)*, a motion to dismiss lies for "failure to state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6)*. In order to state a claim, *Federal Rule of Civil Procedure 8(a)(2)* requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (quoting *Fed. R. Civ. P. 8(a)(2)*; and *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*). "While a complaint attacked by a *Rule 12(b)(6)* motion to dismiss does [*4] not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, 550 U.S. at 555* (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Twombly, 550 U.S. at 570*).

At this stage in the litigation, the Court must consider the factual allegations in the complaint as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994)*. Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993)*.

## III. ANALYSIS

Defendant seeks dismissal of both counts of the Amended Complaint. First, Defendant moves to dismiss Count I on the basis that Plaintiff has not adequately [*5] alleged coverage under the FLSA. Second, Defendant argues that the FMWA claim is barred because Plaintiff failed to comply with the FMWA's pre-suit notice provision. The Court will address each of these arguments in turn.

### A. Count I, Violation of the FLSA

The FLSA generally requires "employers who meet its preconditions to pay workers a minimum wage and to provide overtime pay where workers exceed forty hours per week." *Polycarpe v. E&S Landscaping Serv., Inc., 616 F.3d 1217, 1220 (11th Cir. 2010)* (citing *29 U.S.C. §§ 206(a), 207(a)*). In order to trigger the applicability of the FLSA, an employee must establish that she is covered by the Act, based on either individual coverage or enterprise coverage. Id. Here, Defendant argues that Count I should be dismissed because Plaintiff has failed to establish either theory of coverage. As explained below, the Court finds that Plaintiff has not stated a claim for individual coverage, but that she has adequately pleaded enterprise coverage.

#### i. Individual Coverage

First, Defendant asserts that Plaintiff has not sufficiently pleaded individual coverage under the FLSA. An employee may claim individual coverage if she "regularly and 'directly participates [*6] in the actual movement of persons or things in interstate commerce.'" *Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir. 2011)* (quoting *Thorne v. All Restoration Servs., 448 F.3d 1264, 1266 (11th Cir. 2006)*); see also *29 U.S.C. § 206(a)* (mandating that employers pay the statutory minimum wage to "each of his employees who in any workweek is engaged in [interstate] commerce or in the production of goods for [interstate] commerce"). As the Eleventh Circuit explained in Thorne, this requires that the employee either "(i) [work] for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) [regularly use] the

instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *448 F.3d at 1266* (citing *McLeod v. Threlkeld, 319 U.S. 491, 493-98, 63 S. Ct. 1248, 87 L. Ed. 1538 (1943))*.

Here, Plaintiff does not allege either of the Thorne factors. First, she does not claim that she worked for an instrumentality of interstate commerce. While Defendant may *use* the instrumentalities of interstate commerce -- by shipping its goods, for instance -- Plaintiff does not claim [*7] that Defendant itself is such an instrumentality. See *Josendis, 662 F.3d at 1316* (finding that, while the defendant's engaging in interstate commerce may be relevant under a theory of enterprise liability, it is irrelevant to the individual enterprise inquiry). Second, Plaintiff does not assert that she regularly used the instrumentalities of interstate commerce, whether through interstate communication, travel, or other means. Rather, she asserts individual coverage on the basis that "Plaintiff and other similarly situated SORTERS handled goods and materials -- all of which traveled through interstate commerce -- and inspects and sorts the goods and materials to ascertain whether the goods or materials are appropriate for distribution." DE 16 ¶ 8. However, as Defendant points out, merely "handling goods . . . that have previously traveled in interstate commerce does not constitute engaging in interstate commerce." *Joseph v. Nichell's Caribbean Cuisine, Inc., 862 F. Supp. 2d 1309, 1313 (S.D. Fla. 2012)*; see also *Thorne, 448 F.3d at 1267* (finding that an employee who engages in intrastate movement of goods, which have been previously moved in interstate commerce, is not covered under [*8] the FLSA). In order to plead individual coverage, a plaintiff must at least allege that the goods continued to move in interstate commerce after she handled them. See *Lopez v. Top Chef Inv., Inc., No. 07-21598-CIV-MOORE/GARBER, 2007 U.S. Dist. LEXIS 88120, at *4-5 (S.D. Fla. Nov. 30, 2007)* (finding no individual coverage for a cook at a local restaurant because he "[did] not allege that the food later returned to interstate commerce."). In this case, Plaintiff does not claim that the goods and materials that she sorted returned to the stream of interstate commerce after she sorted them. She alleges only that the goods traveled through interstate prior to her handling them. Therefore, the Court concludes that Plaintiff has failed to adequately plead individual coverage under the FLSA.

*ii. Enterprise Coverage*

Defendant also claims that Plaintiff has not sufficiently alleged enterprise coverage. Pursuant to *§ 206(a)* of the FLSA, enterprise coverage applies to any employee who "is employed in an enterprise engaged in [interstate] commerce or in the production of goods for [interstate] commerce." *Section 203(r)* defines an "enterprise" as:

> (1) The related activities performed (either through [*9] unified operation or common control) by any person or persons **for a common business purpose**, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units . . . .

*29 U.S.C. § 203(r)*. Further, *§ 203(s)(1)(A)* provides that an "enterprise engaged in commerce or in the production of goods for commerce" is one that:

> (i) has employees engaged in [interstate] commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

*29 U.S.C. § 203(s)(1)(A)*.

Here, Defendant contends that Plaintiff has failed to sufficiently allege that Defendant is an 'enterprise' acting with a 'common business purpose' under *§ 203(r)*. As noted above, Defendant is 501(c)(3) nonprofit organization. However, their nonprofit status does not necessarily exempt them from enterprise coverage. The Supreme Court has recognized that "[a]ctivities [*10] of eleemosynary, religious, or educational organization[s] may be performed for a business purpose. Thus, where such organizations engage in ordinary commercial activities . . . the business activities will be treated under the [FLSA] the same as when they are performed by the

ordinary business enterprise." *Tony & Susan Alamo Foundation v. Sec'y of Labor, 471 U.S. 290, 297, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985)* (quoting *29 C.F.R. § 779.214 (1984)).* In determining whether a charitable enterprise meets the 'common business purpose' requirement, courts have looked at whether "the enterprise is primarily engaged in competition in the public with ordinary commercial activities." *Kitchings v. Fla. United Methodist Children's Home, Inc., 393 F. Supp. 2d 1282, 1294 (M.D. Fla. 2005)* (quoting *Murray v. R.E.A.C.H. of Jackson County, Inc., 908 F. Supp. 337, 339 (M.D.N.C. 1995)).*

Here, the Amended Complaint alleges the following facts relevant to Plaintiff's claim that Defendant competes with private businesses:

> 6. . . . . The Defendant solicits funds from out-of-state entities including, but not limited to, Feeding America, Proctor & Gamble, Gordon Food Services, and the United States Department of Agriculture (all located outside [*11] of Florida). Defendant also sells merchandise/apparel on the internet via its website. Defendant also charges approximately 19 cents per pound to transport the goods to tis [sic] facility, competing with other logistics companies. Defendant purchases pallets of food via bids placed. Defendant's customers pay a certain price to receive "donations."

DE 16 ¶ 6. Defendant contends that none of these allegations, taken as true, would be sufficient to plausibly demonstrate enterprise coverage. In analyzing Plaintiff's factual allegations, the Court keeps two background principles in mind. First, the determination of whether a nonprofit is engaged in competition "requires a factually-driven analysis of whether the entity is [so engaged]." *Davis v. Group Homes for Children, Inc., No. 2:09cv415-WHA (WO), 2009 U.S. Dist. LEXIS 81531, at *14-15 (S.D. Ala. Sept. 8, 2009).* Unless a party has failed to satisfy the pleading standard under *Iqbal,* this fact-intensive inquiry is generally more appropriately conducted at the summary judgment stage, rather than on a motion to dismiss. See *id.* Second, courts conducting this analysis have placed emphasis on whether a nonprofit's commercial activities cause [*12] it to interact with the general public such that the nonprofit

economically competes with other organizations. Compare *Wagner v. Salvation Army, 660 F. Supp. 466, 467-68 (E.D. Tenn. 1986)* (finding that the defendant's transient lodge did not qualify as an 'enterprise' because it did not serve the general public and did not compete with private entrepreneurs), with *Archie v. Grand Cent. P'ship, 997 F. Supp. 504, 529 (S.D.N.Y. 1998)* (finding enterprise coverage where defendant nonprofit employed plaintiffs to perform security and recycling activities for public and private entities, and thereby "competed against other organizations for economically beneficial contracts.").

Based on these principles, the Court concludes that the Amended Complaint plausibly alleges enterprise coverage. The Court finds two of Plaintiff's allegations particularly relevant. First is Plaintiff's claim that Defendant bids on pallets of food. Defendant in the instant motion has asked the Court to take note that one of its primary activities is distributing grocery products to a network of other agencies, who then distribute it to the needy. Plaintiff alleges that Defendant purchases such products by competing [*13] with other entities through bids placed on pallets. In engaging in that competition, the payment of substandard wages would undoubtedly give Defendant an unfair advantage against other organizations that bid on the products. This is one means of 'unfair method of competition' that the FLSA was enacted to prevent. See *Tony & Susan Alamo Foundation, 471 U.S. at 299;* see also *Archie, 997 F. Supp. at 529* (finding that violations of minimum wage laws gave the defendant nonprofit an unfair advantage in competing against other organizations). Second, Plaintiff alleges that Defendant charges a fee for its 'donations.' Courts have frequently considered whether a nonprofit charged a fee for its services to be relevant in assessing the organization's commercial activities. See *Murray, 908 F. Supp. at 341* (finding no enterprise coverage in part because "[t]he organization does not charge money for [its] services, and no goods are sold on the premises.") (citing *Wagner, 660 F. Supp. at 467);* see also *Briggs v. Chesapeake Volunteers in Youth Servs., 68 F. Supp. 2d 711, 714-15 (E.D. Va. 1999)* (finding no enterprise coverage because defendant did not "[compete] with other commercial ventures, or [charge] [*14] its clients for services."). Taken together, these two allegations plausibly show that Defendant was engaged in ordinary commercial activities, and thus that Plaintiff is entitled to enterprise coverage under the FLSA. Accordingly, the motion will be denied as to Count I.

**B. Count II, Violation of the FMWA**

In Count II of the Amended Complaint, Plaintiff alleges that Defendant violated the FMWA, *Florida Statutes § 448.110*, for failing to pay her for work performed before 8 a.m. Defendant argues that Count II should be dismissed because Plaintiff failed to give proper pre-suit notice of her claim. Pursuant to *Florida Statutes, § 448.110(6)(a)*, a party wishing to bring suit under the FMWA must provide pre-suit written notice to her employer, stating her intent to bring such an action. Specifically, the statute provides that:

> The notice must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice.

*Fla. Stats. § 448.110(6)(a)*. Once the employee gives notice of the claim, the employer has fifteen days to pay the unpaid wages [*15] or otherwise resolve the claim. *§ 448.110(6)(b)*. If the employer does not settle the claim within that period, then the employee may bring suit under the FMWA. Id. Courts in this District have routinely dismissed FMWA claims that fail to satisfy the pre-suit notice requirement. See, e.g., *Gomez v. Kern, No. 12-20622-CIV-COOKE/TURNOFF, 2012 U.S. Dist. LEXIS 44102, at *4-5 (S.D. Fla. Mar. 29, 2012)*; *Dominguez v. Design by Nature Corp., No. 08-20858-CIV-O'SULLIVAN, 2008 U.S. Dist. LEXIS 83467, at *3-5 (S.D. Fla. Sept. 25, 2008)*.

In the instant motion, Defendant concedes that Plaintiff provided notice of her claim, but disputes that the notice satisfied *§ 448.110(6)(b)*. Defendant purports to attach a copy of the notice to the present motion. However, Plaintiff makes no reference to any pre-suit notice in her Amended Complaint, nor does she attach it to the Amended Complaint. At the motion to dismiss stage, the Court will not consider matters outside the pleadings. Accordingly, because the Court cannot determine whether the notice complied with the statutory requirement, the Court will dismiss Count II without prejudice. See *Gomez, 2012 U.S. Dist. LEXIS 44102, at*

*4-5* (dismissing without [*16] prejudice FMWA claim where defendants disputed the adequacy of the notice, but plaintiff failed to plead the contents thereof).

**IV. CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Plaintiff's Amended Complaint [DE 22] is **GRANTED in part and DENIED in part** as follows:

> a. With respect to Count I of the Amended Complaint, the motion is **DENIED**.

> b. With respect to Count II of the Amended Complaint, the motion is **GRANTED** and Count II is **DISMISSED without prejudice**.

2. By no later than **June 24, 2013**, Plaintiffs may file a Second Amended Complaint in accordance with the above findings. Alternatively, by no later than **June 24, 2013**, Plaintiff may file a Notice to proceed solely on Count I.

3. Defendants' Answer will be due 14 calendar days from the filing of a Second Amended Complaint or Notice.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 12th day of June, 2013.

/s/ James I. Cohn

JAMES I. COHN

United States District Judge



**PEARL REAGOR, Plaintiff-Appellant, v. OKMULGEE COUNTY FAMILY RESOURCE CENTER, INC., a domestic not-for-profit corporation, Defendant-Appellee.**

**No. 11-7070**

**UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT**

*501 Fed. Appx. 805; 2012 U.S. App. LEXIS 23368; 19 Wage & Hour Cas. 2d (BNA) 1855*

**November 14, 2012, Filed**

**NOTICE:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [**1]
   (D.C. No. 6:11-CV-00085-JHP). (E.D. Okla.).
*Reagor v. Okmulgee County Family Res. Ctr., Inc., 2011 U.S. Dist. LEXIS 99940 (E.D. Okla., Sept. 6, 2011)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant employer, alleging violation of the Fair Labor Standards Act (FLSA), *29 U.S.C.S. §§ 201-219*, breach of contract, and violation of Oklahoma labor laws. The United States District Court for the Eastern District of Oklahoma dismissed the complaint under *Fed. R. Civ. P. 12(b)(6)*. The employee appealed.

**OVERVIEW:** Because the employee failed to allege sufficient facts indicating that she engaged in interstate commerce or that the employer was an enterprise engaged in commerce, the employee's claim that she was entitled to protection under the FLSA was not plausible. Employee's assertion that she handled goods that traveled in interstate commerce was conclusory, and even if the goods had traveled in interstate commerce, she did not engage in commerce, because the FLSA did not include goods after their delivery into the actual physical possession of the ultimate consumer. The employer was a non-profit organization, which provided shelter to victims of domestic violence; nothing in the complaint suggested that the employer was engaged in a business purpose or in any type of competition. Because the federal claims were dismissed before trial, a district court should have declined jurisdiction over state-law claims and dismissed them without prejudice.

**OUTCOME:** The district court was affirmed as to the FLSA claim and the appellate assertions regarding discovery. The case was remanded to the district court with instructions to vacate its judgment and re-enter judgment dismissing the state-law claims without prejudice.

**LexisNexis(R) Headnotes**

*Evidence > Procedural Considerations > Burdens of Proof > Allocation*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
[HN1] The Fair Labor Standards Act (FLSA), *29 U.S.C.S. §§ 201-219*, requires overtime pay of time and a

501 Fed. Appx. 805, *; 2012 U.S. App. LEXIS 23368, **1;
19 Wage & Hour Cas. 2d (BNA) 1855

half of regular pay for an employee who works more than 40 hours per week and who is engaged in commerce or employed in an enterprise engaged in commerce. *29 U.S.C.S. § 207(a)(1). 29 U.S.C.S. § 203(b).* "Commerce" means trade, commerce, transportation, transmission, or communication among the several states or between any state and any place outside thereof. To be eligible for overtime, an employee bears the burden to show that she is entitled to the protection of the FLSA. She may do so by asserting sufficient facts to plausibly state a claim either (1) that she, individually, was engaged in commerce or (2) that the employer is an enterprise engaged in commerce. Employment may be covered under the FLSA pursuant to either individual or enterprise coverage.

***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period***
[HN2] See *29 U.S.C.S. § 207(a)(1).*

***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period***
[HN3] In assessing individual and enterprise coverage under the Fair Labor Standards Act (FLSA), *29 U.S.C.S. §§ 201-219,* Congress intends to regulate only activities constituting interstate commerce, not activities merely affecting commerce. Practical considerations guide when determining what constitutes commerce or engaging in commerce.

***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period***
[HN4] For individual coverage under the Fair Labor Standards Act, *29 U.S.C.S. §§ 201-219,* an employee must directly participate in the actual movement of persons or things in interstate commerce. To be engaged in commerce within the meaning of that phrase, an employee must be actually engaged in the movement of commerce, or the services he performs must be so closely related thereto as to be for all practical purposes an essential part thereof. To determine whether an employee is engaged in commerce courts look at her activities, not the business of her employer. She must either work for a transportation or communication industry employer or regularly and recurrently use an instrument of interstate commerce, such as a telephone. *29 C.F.R. § 776.10(b)* requires regular and recurrent use of instruments of communication as part of job duties. Isolated or sporadic

activities do not satisfy this requirement. For an employee to be engaged in commerce, a substantial part of the employee's work must be related to interstate commerce.

***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period***
[HN5] For enterprise coverage under the Fair Labor Standards Act, *29 U.S.C.S. §§ 201-219,* there must be an enterprise engaged in commerce or in the production of goods for commerce. *29 U.S.C.S. § 203(s)(1).* Such an enterprise has employees engaged in commerce or handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and had annual gross volume of sales made or business done of $500,000 or more. *29 U.S.C.S. § 203(s)(1)(A)(i), (ii).* A non-profit may engage in business activities and therefore be an enterprise. But the question is whether the non-profit is primarily engaging in competition in the public with commercial enterprises.

***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period***
[HN6] The Fair Labor Standards Act, *29 U.S.C.S. §§ 201-219,* does not include goods after their delivery into the actual physical possession of the ultimate consumer. *29 U.S.C.S. § 203(i).*

***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period***
[HN7] Where services are performed for local project, Fair Labor Standards Act, *29 U.S.C.S. §§ 201-219,* does not apply.

***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Employers***
[HN8] Generally, activities of nonprofits are not considered to be conducted for a common business purpose unless they engage in commercial activity.

***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Employers***
***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Enterprise Coverage***
[HN9] Unless it engages in commercial activities in competition with private entrepreneurs or qualifies as one

501 Fed. Appx. 805, *; 2012 U.S. App. LEXIS 23368, **1;
19 Wage & Hour Cas. 2d (BNA) 1855

of the organizations listed in *29 U.S.C.S. § 203(r)(2)*, a non-profit charitable organization is not an enterprise under *29 U.S.C.S. § 203(r)* because it is not conducted for a business purpose.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Discovery > General Overview*
[HN10] Where the district court accepts the plaintiff's allegations as true, but concludes that those allegations are insufficient as a matter of law, it is not an abuse of discretion to limit discovery sua sponte.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview*
*Civil Procedure > Dismissals > Involuntary Dismissals > General Overview*
[HN11] Where federal claims are dismissed before trial, a district court should decline jurisdiction over state-law claims and dismiss them without prejudice.

**COUNSEL:** For PEARL REAGOR, Plaintiff - Appellant: Daniel E. Smolen, David Arthur Warta, Smolen Smolen & Roytman Pllc, Tulsa, OK.

For OKMULGEE COUNTY FAMILY RESOURCE CENTER, INC., a domestic not-for-profit corporation, Defendant - Appellee: Christopher Lincoln Camp, Camp Law Firm, Tulsa, OK.

**JUDGES:** Before HARTZ, ANDERSON, and EBEL, Circuit Judges.

**OPINION BY:** David M. Ebel

**OPINION**

[*806] **ORDER AND JUDGMENT***

    *    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G)*. The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res

judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with *Fed. R. App. P. 32.1* and *10th Cir. R. 32.1*.

Pearl Reagor, an employee of Okmulgee County Family Resource Center, Inc. (OCFRC), appeals from the district court's grant of OCFRC's motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)* her first amended complaint. In that complaint, she asserted claims [**2] for (1) failure to pay overtime in violation of the Fair Labor Standards Act (FLSA), *29 U.S.C. §§ 201-219*; (2) breach of contract; and (3) violation of Oklahoma labor laws. She argues that the district court erred in dismissing [*807] the FLSA claim and in failing to allow limited discovery before dismissing. She also seeks clarification of the court's dismissal of the state-law claims. Exercising jurisdiction under *28 U.S.C. § 1291*, we affirm the dismissal of the FLSA claim and remand for dismissal without prejudice of the state-law claims.

**BACKGROUND**

OCFRC is a non-profit agency that provides services to victims of domestic violence and sexual assault. Ms. Reagor works a forty-eight-hour weekend shift at OCFRC's safe house shelter, but she is compensated for only forty hours of work. By agreement of the parties, OCFRC treats eight hours as volunteer time--four hours per night for sleeping on Saturdays and Sundays, subject to interruption should responsibilities arise. This agreement was entered into after OCFRC's executive director stated at a board meeting that OCFRC must comply with the FLSA and pay employees for all on-duty hours. Ms. Reagor, however, contends that she is entitled to overtime [**3] pay under the FLSA for the extra eight hours each week. In support, she asserts in her first amended complaint that:

> Plaintiff is an "employee engaged in commerce" and Defendant is an "employer" within the meaning of the FLSA. Upon information and belief that will be confirmed through discovery, Plaintiff and Defendant's other employees handled good[s] and/or admitted clients into Defendant's facility who had moved across state lines from California, Texas and Indian Territories. Plaintiff utilized the telephone as part of her duties, and was responsible for security of Defendant's

facility, including the monitored security system at the facility. Plaintiff also was responsible for helping patrons of the facility secure cellular telephone service and upgrades to existing cellular phone plans.

Plaintiff also secured pharmaceutical prescriptions at the facility that [had] been manufactured and distributed within interstate commerce on behalf of Defendant's clients. Furthermore, Defendant's facility is located within easy access of U.S. highway 75 and is therefore conveniently located to attract clients from out of state by virtue of Defendant's facility's easy access from the highway.

Aplt. App. at 34-35.[1] [**4] Also, Ms. Reagor asserted that OCFRC breached its contract with her and violated the Oklahoma Protection of Labor Act and the Oklahoma Minimum Wage Act.

1 Ms. Reagor filed her first amended complaint after OCFRC filed a motion to dismiss her complaint under *Rule 12(b)(6)*.

OCFRC moved to dismiss under *Rule 12(b)(6)*, asserting that the first amended complaint failed to set forth facts showing it was plausible that Ms. Reagor was entitled to the FLSA's protections. The district court granted the motion, finding that Ms. Reagor's factual allegations did not "raise a right to relief above the speculative level" and her bare assertions lacked factual support. *Id.* at 90.

**STANDARD OF REVIEW**

We review de novo the district court's *Rule 12(b)(6)* dismissal for failure to state a claim for relief. *See Khalik v. United Air Lines, 671 F.3d 1188, 1190 (10th Cir. 2012)*. Under *Federal Rule of Civil Procedure 8(a)(2)*, a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a [*808] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on [**5] its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But "dismissal is appropriate where 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Al-Owhali v. Holder, 687 F.3d 1236, 1240 (10th Cir. 2012)* (quoting *Iqbal, 556 U.S. at 679*). "Thus, mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice. Accordingly, in examining a complaint under *Rule 12(b)(6)*, we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik, 671 F.3d at 1191* (quoting *Twombly, 550 U.S. at 555*). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*.

**DISCUSSION**

I. FLSA

Ms. Reagor argues that she sufficiently pleaded the elements of an FLSA claim and therefore the district court erred in dismissing under [**6] *Rule 12(b)(6)*. In her complaint, she alleged that she is an FLSA-covered employee and that OCFRC is an FLSA-covered employer. She further alleged that she was not paid overtime for hours she worked in excess of forty-hours per week. She contends that these allegations satisfy *Rule 8(a)* and plausibly state her claim for relief under the FLSA. We disagree.

[HN1] The FLSA requires overtime pay of time and a half of regular pay for an employee who works more than forty hours per week and who is "engaged in commerce . . . or . . . employed in an enterprise engaged in commerce." *29 U.S.C. § 207(a)(1)*.[2] *See generally 29 U.S.C. § 203(b)* ("'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."). To be eligible for overtime, Ms. Reagor bears the burden to show that she is entitled to the protection of the FLSA. *See Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir. 2011)*. As is relevant to this case, she may do so by asserting sufficient facts to plausibly state a claim either (1) that she, individually, was engaged in commerce or (2) that OCFRC is an enterprise engaged [**7] in commerce. *See id. at 1298-99; see also Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 295 n.8,*

*105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985)* ("Employment may be covered under the [FLSA] pursuant to either 'individual' or 'enterprise' coverage.").

2   *Section 207(a)(1)* states:

> [HN2] [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Ms. Reagor does not assert under *§ 207(a)(1)* that either she or OCFRC produced goods for commerce.

[*809] [HN3] In assessing individual and enterprise coverage, Congress intends to "regulate only activities constituting interstate commerce, not activities merely affecting commerce." *Thorne v. All Restoration Servs., Inc., 448 F.3d 1264, 1266 (11th Cir. 2006)* (citing *McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S. Ct. 1248, 87 L. Ed. 1538 (1943)).* Practical considerations guide when determining what constitutes commerce or engaging in commerce. [**8] *Overstreet v. N. Shore Corp., 318 U.S. 125, 128, 63 S. Ct. 494, 87 L. Ed. 656 (1943).*

[HN4] For individual coverage, an employee must "directly participat[e] in the actual movement of persons or things in interstate commerce." *Thorne, 448 F.3d at 1266; see N.M. Pub. Serv. Co. v. Engel, 145 F.2d 636, 638 (10th Cir. 1944)* ("[T]o be engaged in commerce within the meaning of that phrase, an employee must be actually engaged in the movement of commerce, or the services he performs must be so closely related thereto as to be for all practical purposes an essential part thereof."). To determine whether an employee is engaged in commerce we look at her activities, not the business of her employer. *See Mitchell v. Lublin, McGaughy &*

*Assocs., 358 U.S. 207, 211, 79 S. Ct. 260, 3 L. Ed. 2d 243 (1959).* She must either work for a transportation or communication industry employer or regularly and recurrently use an instrument of interstate commerce, such as a telephone. *See Thorne, 448 F.3d at 1266; see also 29 C.F.R. § 776.10(b)* (requiring regular and recurrent use of instruments of communication as part of job duties). Isolated or sporadic activities do not satisfy this requirement. *Dent v. Giaimo, 606 F. Supp. 2d 1357, 1360 (S.D. Fla. 2009); see also Bowrin v. Catholic Guardian Soc'y., 417 F. Supp. 2d 449, 466 (S.D.N.Y. 2006)* [**9] (stating that de minimis interstate activities are not covered by FLSA); *Kitchings v. Fla. United Methodist Children's Home, Inc., 393 F. Supp. 2d 1282, 1293 n.26 (M.D. Fla. 2005)* ("For an employee to be engaged in commerce, a substantial part of the employee's work must be related to interstate commerce." (internal quotation marks omitted)).

[HN5] For enterprise coverage, there must be an "[e]nterprise engaged in commerce or in the production of goods for commerce." *29 U.S.C. § 203(s)(1)* (internal quotation marks omitted). Such an enterprise "has employees engaged in commerce . . . or . . . handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and had "annual gross volume of sales made or business done" of $500,000 or more. *Id. § 203(s)(1)(A)(i), (ii).* A non-profit may engage in business activities and therefore be an enterprise. *See Tony & Susan Alamo Found., 471 U.S. at 296-97.* But the question is whether the non-profit is primarily engaging in competition in the public with commercial enterprises. *See Kitchings, 393 F. Supp. 2d at 1294; Briggs v. Chesapeake Volunteers in Youth Servs., Inc., 68 F. Supp. 2d 711, 714-15 (E.D. Va. 1999)* [**10] (citing *Tony & Susan Alamo Found., 471 U.S. at 295-99*).

A. Individual Coverage

Ms. Reagor contends that she pleaded sufficient facts to show that she, individually, was an employee engaged in commerce. As indicated above, she asserted in her complaint that she (1) handled goods that traveled in interstate commerce; (2) admitted clients who had moved across state lines; (3) used a telephone; (4) was responsible for obtaining cellular telephones or upgrading cellular telephone plans for clients; and (5) secured prescription drugs manufactured and distributed in interstate commerce for clients. We assess each of these

501 Fed. Appx. 805, *809; 2012 U.S. App. LEXIS 23368, **10;
19 Wage & Hour Cas. 2d (BNA) 1855

in turn to [*810] determine whether Ms. Reagor plausibly stated a claim for relief under the FLSA.

Ms. Reagor's assertion that she handled goods that traveled in interstate commerce is conclusory. Even if the goods had traveled in interstate commerce, she did not engage in commerce, because [HN6] the FLSA "does not include goods after their delivery into the actual physical possession of the ultimate consumer." *29 U.S.C. § 203(i); see Joles v. Johnson Cnty. Youth Servs. Bureau, Inc., 885 F. Supp. 1169, 1178-79 (S.D. Ind. 1995).* Any effect Ms. Reagor may have had on commerce was too remote [**11] to qualify as engaging in commerce. *See Joles, 885 F. Supp. at 1179.*

Ms. Reagor's assertion that OCFRC provided housing for clients who previously lived in other states does not implicate interstate commerce. She does not assert that she was responsible in any way for these clients arriving at the shelter. Her contact with them was strictly local. *See Clyde v. Broderick, 144 F.2d 348, 351 (10th Cir. 1944)* (stating that [HN7] where services are performed for local project, FLSA does not apply); *Dent, 606 F. Supp. 2d at 1361* (holding that although patients may have been residents of other states, there was no engagement in interstate commerce where all contacts were local). Also, there is no indication that out-of-state clients regularly or recurrently lived at the shelter. *See Dent, 606 F. Supp. 2d at 1361.* OCFRC's location near a highway is insufficient by itself to suggest that she engaged in interstate commerce.

Ms. Reagor's assertion that she uses the telephone as part of her duties is conclusory. She does not assert that her use of the telephone was a regular and recurrent part of her duties or that she used the telephone for interstate communications. *See Thorne, 448 F.3d at 1266-67.*

Ms. [**12] Reagor's assertion of helping persons obtain cellular telephone service or upgrade existing service also does not implicate interstate commerce. She provided that help as part of the charitable activities of OCFRC, not as a competitor in the cellular telephone business.

Ms. Reagor's assertion of securing pharmacy prescriptions that had been manufactured and distributed in interstate commerce consists of merely handling goods which have already been delivered to the consumer. *See 29 U.S.C. § 203(i).*

Because Ms. Reagor has failed to plausibly suggest that she engaged in interstate commerce, we cannot draw a reasonable inference that OCFRC is liable for overtime pay under the FLSA. *See Iqbal, 129 S. Ct. at 1949.*

B. Enterprise Coverage

Ms. Reagor contends that OCFRC is covered by the FLSA because its executive director stated at a board meeting that the FLSA requires OCFRC to pay for all hours worked. After that meeting, OCFRC prepared an employment agreement for Ms. Reagor, which stated that she agreed to volunteer eight hours of her time for each weekend shift.

Again, we conclude that Ms. Reagor has failed to plausibly state a claim for relief under the FLSA. The statement by OCFRC's executive [**13] director at the board meeting was insufficient standing alone to plausibly indicate OCFRC was engaged in interstate commerce. As indicated above, OCFRC is a non-profit organization, which provides shelter to victims of domestic violence. [HN8] Generally, activities of nonprofits "are not considered to be conducted for a common business purpose unless they engage in commercial activity." *Bowrin, 417 F. Supp. 2d at 459* (citing *Tony & Susan Alamo Found., 471 U.S. at 297 n.14*). Nothing in the complaint suggests that OCFRC was engaged in a business [*811] purpose or in any type of competition. *See 29 C.F.R. § 779.214* (requiring eleemosynary organization to perform activities for business purpose for FLSA coverage); *cf. Murray v. R.E.A.C.H. of Jackson Cnty., Inc., 908 F. Supp. 337, 339-40 (W.D.N.C. 1995)* (deciding in summary judgment case that charitable temporary shelter for victims of domestic violence and sexual abuse was not engaged in business enterprise covered by FLSA); *Joles, 885 F. Supp. at 1175* ([HN9] "Unless it engages in commercial activities in competition with private entrepreneurs or qualifies as one of the organization[s] listed in *29 U.S.C. § 203(r)(2)*, a non-profit charitable organization [**14] is not an 'enterprise' under *§ 203(r)* because it is not conducted for a 'business purpose.'"); *Wagner v. Salvation Army, 660 F. Supp. 466, 468-69 (E.D. Tenn. 1986)* (deciding in summary judgment case that transient lodge was not enterprise engaging in commercial activities within meaning of FLSA, because it did not serve general public or compete with private businesses).

Because Ms. Reagor failed to allege sufficient facts indicating that she engaged in interstate commerce or that

501 Fed. Appx. 805, *811; 2012 U.S. App. LEXIS 23368, **14;
19 Wage & Hour Cas. 2d (BNA) 1855

OCFRC was an enterprise engaged in commerce, we cannot draw an inference that her claim that she is entitled to protection under the FLSA is plausible. We therefore conclude the district court appropriately granted OCFRC's motion to dismiss under *Rule 12(b)(6)*.

## II. Discovery

Ms. Reagor argues that the district court should have allowed her to conduct limited discovery concerning OCFRC's coverage under the FLSA before dismissing her claim. But she never requested discovery before the court ruled on OCFRC's motion to dismiss.[3] We therefore conclude the court did not abuse its discretion in failing to order discovery sua sponte. *See Flaim v. Med. College of Ohio, 418 F.3d 629, 643 (6th Cir. 2005)* ([HN10] "Where the district [**15] court accepts the plaintiff's allegations as true, but concludes that those allegations are insufficient as a matter of law, it is not an abuse of discretion to limit discovery *sua sponte.*"); *Baylis v. Marriott Corp., 906 F.2d 874, 878 (2d Cir. 1990)* (deciding district court did not abuse its discretion when it dismissed complaint without sua sponte ordering discovery); *see also Iqbal, 129 S. Ct. at 1954* (deciding that because complaint was deficient under *Rule 8*, plaintiff was not entitled to discovery).

> 3   Although Ms. Reagor indicates in her complaint that she will confirm her allegations through discovery, we do not consider that to be a sufficient request for discovery.

## III. State-Law

Claims Lastly, Ms. Reagor asks that this case be remanded for the district court to clarify whether it retained jurisdiction over her state-law claims, and, if it did not, whether the dismissal of the claims was without prejudice. Based on our review of the court's order and judgment, we conclude the court did not retain jurisdiction over the state-law claims and the court dismissed all claims with prejudice. Because the state-law claims should have been dismissed without prejudice, we remand to the district [**16] court with instructions to dismiss the state-law claims without prejudice. *See Brooks v. Gaenzle, 614 F.3d 1213, 1229 (10th Cir. 2010)* (stating that [HN11] where federal claims are dismissed before trial, district court should decline jurisdiction over state-law claims and dismiss them without prejudice).

## CONCLUSION

The judgment of the district court is AFFIRMED as to the FLSA claim and [*812] the appellate assertions regarding discovery. The case is REMANDED to the district court with instructions to vacate its judgment and re-enter judgment dismissing the state-law claims without prejudice.

Entered for the Court

David M. Ebel

Circuit Judge



ANDREW APPLE; PASCAL ARMSTRONG; ELGIN BECKFORD; EMERIE BECKFORD; SEWAYNE DALEY; MAURICE GRIFFIN; JEANETTE HENRIQUES; ALFONZA LEWIS; LLOYD BERNARD MATTHEWS; CAROL NEILS; KATHLEEN NOREIGA; ALONZO PHILLIPS; KIMRON PRIME; WAYNE ST. LOUIS; JONATHAN SILVA; ANDRE SMALL; CLARENCE STEWART; JAY WHITLEY; JEFFREY WILLIAMS; and DEVIN WRIGHT, Plaintiffs, - versus - ATLANTIC YARDS DEVELOPMENT COMPANY, LLC; BROOKLYN ARENA LLC; BROOKLYN UNITED FOR INNOVATIVE LOCAL DEVELOPMENT; JAMES CALDWELL; FOREST CITY RATNER COMPANIES, LLC; FOREST CITY ENTERPRISES, INC.; GAUSIA JONES; JANE MARSHALL; ORBIN'S BIG GREEN MACHINE; and BRUCE RATNER, Defendants, MICHAEL THOMAS, Proposed Intervenor.

11-CV-5550 (JG)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*2014 U.S. Dist. LEXIS 152053; 201 L.R.R.M. 3317*

October 27, 2014, Decided
October 27, 2014, Filed

**NOTICE:**

NOT FOR PUBLICATION

**PRIOR HISTORY:** *Apple v. Atlantic Yards Dev. Co. LLC., 2012 U.S. Dist. LEXIS 84281 (E.D.N.Y., June 18, 2012)*

**COUNSEL:** [*1] For Plaintiffs: Matthew D. Brinckerhoff, EMERY CELLI BRINCKERHOFF & ABADY LLP, New York, New York and Gary Steven Stone, Molly Anne Thomas-Jensen, Nicole E. Salk, Sarah E. Dranoff, SOUTH BROOKLYN LEGAL SERVICES, Brooklyn, New York.

For Atlantic Yards Development Company, LLC; Brooklyn Arena LLC; Brooklyn United for Innovative Local Development; James Caldwell; Forest City Ratner Companies, LLC; Forest City Enterprises, Inc.; Jane Marshall and Bruce Ratner, Defendants: Harold P. Weinberger, Robert N. Holtzman, Eileen M. Patt, Sarah N. Rosen, Kristin N. Difrancesco, Selina M. Ellis, KRAMER LEVIN NAFTALIS & FRANKEL LLP, New York, New York.

For Gausia Jones and Orbin's Big Green Machine, Defendant: Michael Tremonte, Justin J. Gunnell, SHER TREMONTE LLP, New York, New York.

For Proposed Intervenor Michael Thomas: Ernestine J. Mings, LAW OFFICE OF ERNESTINE MINGS, Brooklyn, New York.

**JUDGES:** John Gleeson, United States District Judge.

**OPINION BY:** John Gleeson

**OPINION**

2014 U.S. Dist. LEXIS 152053, *1; 201 L.R.R.M. 3317

## MEMORANDUM AND ORDER

JOHN GLEESON, United States District Judge:

The plaintiffs in this case have brought various claims arising from their participation in an employment training program. They allege that in exchange for their participation in the program, they [*2] were promised membership in a labor union and construction jobs at the Atlantic Yards construction project in Downtown Brooklyn. They further allege that even though they completed the program and provided two months of unpaid construction work, the promised union membership and jobs were not provided. The defendants are Atlantic Yards Development Company, LLC ("Atlantic Yards Co."), Brooklyn Arena LLC ("Brooklyn Arena"), Forest City Ratner Companies, LLC ("FCRC"), Forest City Enterprises, Inc. ("FCE"), Jane Marshall and Bruce Ratner (collectively, unless otherwise indicated, the "Forest City Defendants"); Brooklyn United for Innovative Local Development ("BUILD") and James Caldwell (collectively, the "BUILD Defendants"); and Gausia Jones and Orbin's Big Green Machine (collectively, the "Jones Defendants").

In a memorandum and order filed June 18, 2012 (Docket Entry ("DE") 38), I denied in part and granted in part defendants' motion to dismiss some of the claims pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*. Discovery has occurred and now, pursuant to *Rule 56(a) of the Federal Rules of Civil Procedure*, the Forest City and BUILD Defendants together move for partial summary judgment and the Jones Defendants separately move for summary judgment regarding the claims made [*3] against them. In addition, nonparty Michael Thomas has filed a motion to intervene in this action.

For the reasons set forth below, the Forest City and BUILD Defendants' motion is granted in part and denied in part, the Jones Defendants' motion is granted, and Thomas's motion to intervene is denied.

## BACKGROUND

### A. *Factual Background*

The following facts are based upon the parties' *Local Civil Rule 56*.[1] statements and supporting materials and are undisputed except as noted.[1] Any disputed facts are construed in the light most favorable to the plaintiffs. *See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)*.

> 1   A stand alone citation to a *Rule 56.1* Statement indicates that the underlying factual allegation is undisputed. Citations to the parties' *Rule 56.1* Statements incorporate by reference the documents cited therein, but where relevant I have directly cited to supporting documents.

For more than a decade the Forest City Defendants have been developing residential and commercial space at Atlantic Yards, a Downtown Brooklyn site that includes the Barclays Center, an 18,000-seat arena. FCD 56.1 ¶ 6. Bruce Ratner is the chairman and former CEO of FCRC, the New York subsidiary of Forest City Enterprises, Inc.; Jane Marshall is the Senior Vice President of Commercial and Residential [*4] Development of FCRC. FCD 56.1 ¶¶ 3-4. BUILD, a not-for-profit corporation, was created in August 2004 to enhance economic opportunities in struggling communities, and in particular those around the Atlantic Yards site. FCD 56.1 ¶ 2; P.'s FCD Response 56.1 ¶ 2.

Atlantic Yards Co. and Brooklyn Arena, both among the Forest City Defendants, executed a Community Benefits Agreement ("CBA") with BUILD and (other entities that are not parties to this action) for the purpose of providing certain benefits to the community stemming from the development of Atlantic Yards. FCD 56.1 ¶ 7. Specifically, the CBA provided for the creation of a job-training program -- the pre-apprenticeship training program ("PATP") -- to train Brooklyn residents for construction jobs at Atlantic Yards. FCD 56.1 ¶¶ 1,7. The Forest City Defendants funded the PATP, which would be administered by BUILD. FCD 56.1 ¶ 9.

Thirty participants were recruited for the PATP from a pool of over 1,000 applicants. FCD 56.1 ¶ 16. The plaintiffs were among those selected for the program. FCD 56.1 ¶ 1. They claim that at an orientation session for the PATP participants, and also at meetings held by BUILD before the launch of the program, James [*5] Caldwell, the President and Chief Executive Officer of BUILD, promised that participants would be placed in union construction jobs at Atlantic Yards upon graduation. According to the plaintiffs, Caldwell repeatedly promised them during the course of the program that they would become construction union

Page 3

2014 U.S. Dist. LEXIS 152053, *5; 201 L.R.R.M. 3317

members upon successful completion. P.'s Disputed 56.1 ¶¶ 9, 43-46, 77. The plaintiffs also allege that at the orientation session, Jane Marshall of FCRC told the participants "that there would be opportunities besides the arena for people to seek employment and training on Atlantic Yards . . . . [T]here would be opportunities for at least ten years [at Atlantic Yards]." They further allege that Marshall confirmed that successful participants in the PATP program would receive union construction jobs. FCD 56.1 ¶ 4; P.'s Disputed 56.1 ¶ 75.

The PATP ran for fifteen weeks and involved both classroom instruction as well as hands-on training. FCD 56.1 ¶¶ 17, 24. The classroom instruction consisted of two sessions: a life skills course based on the book *The Seven Habits of Highly Effective People* and a construction skills course providing lessons in carpentry, plumbing, construction materials and [*6] methods, and electrical wiring. FCD 56.1 ¶¶ 26, 28. Both sessions were taught by BUILD staff. *Id.* To provide hands-on training to participants, BUILD asked FCRC to arrange for participants to work at a particular site in Brooklyn, FCD 56.1 ¶ 30, but FCRC declined to provide the site after finding it to be structurally unsafe. *Id.* BUILD ultimately decided to locate the hands-on training portion of the program at a site in Staten Island recommended by defendant Gausia Jones, a BUILD employee who co-taught the PATP construction skills course. FCD 56.1 ¶¶ 28, 31. In addition to being a BUILD employee, Jones had his own construction company, the defendant Orbin's Big Green Machine ("Orbin's").

The Staten Island site was a basement under renovation by Orbin's. FCD 56.1 ¶ 31. The renovation entailed excavation and the construction of a finished one-bedroom basement apartment. Jones 56.1 ¶ 23. The Jones Defendants were to receive compensation in the amount of $20,000 from the owner of the Staten Island site. Jones 56.1 ¶ 25. Prior to beginning their hands-on training in Staten Island, the PATP participants all signed an agreement in which they requested authorization to "participate in an unpaid [*7] internship for the purposes of hands on experience to engage in activities related to construction work." Jones 56.1 ¶ 31.

At the Staten Island site, Jones provided instruction in various construction techniques, and his co-instructor from the PATP construction skills course, Kevin Whittaker, provided instruction on electrical work. FCD 56.1 ¶ 28; Jones 56.1 ¶¶ 35, 36. Approximately one

month after starting work at the Staten Island site, Jones reported to BUILD that participants were asking for monetary compensation. Jones 56.1 ¶ 37. Approximately ten to twelve weeks after starting the hands-on training, BUILD discontinued work at the Staten Island site. Jones 56.1 ¶ 38.

After the PATP, none of the plaintiffs obtained union apprenticeships through either the Forest City Defendants' or the BUILD Defendants' efforts. P.'s Disputed 56.1 ¶ 122.

B. *Procedural Background*

The plaintiffs commenced this action on November 15, 2011. As mentioned above, all of the defendants filed motions to dismiss some of the plaintiffs' claims for failure to state a claim, and on June 18, 2012, I granted the motion in part and denied it in part. The seven plaintiffs in the original complaint and thirteen additional [*8] plaintiffs filed an amended complaint on April 12, 2013.[2] The Forest City and BUILD Defendants together have now filed a motion for partial summary judgment; the Jones Defendants have moved for summary judgment; and all defendants have moved to preclude certain expert testimony. I informed the parties before oral argument that in the first instance I would consider and decide only the motions for summary judgment; the motion to preclude will be argued and decided at a later time. Finally, Michael Thomas has moved to intervene as a plaintiff.

> 2   The plaintiffs named in the original complaint were Andrew Apple, Pascal Armstrong, Maurice Griffin, Kathleen Noriega, Kimron Price, Jonathan Silva, and Clarence Stewart. The additional plaintiffs are Elgin Beckford, Emerie Beckford, Sewayne Daley, Jeanette Henriques, Alfonza Lewis, Lloyd Bernard Matthews, Carol Neils, Alonzo Phillips, Wayne St. Louis, Andrew Small, Jay Whitley, Jeffrey Williams and Devin Wright.

The amended complaint asserts the following claims: (1) failure to pay the federal minimum wage in violation of the Fair Labor Standards Act ("FLSA") (against all defendants); (2) failure to pay the New York minimum wage in violation of the [*9] New York Labor Law (the "NYLL") (against all defendants); (3) deceptive practices in violation of *§ 349 of the New York General Business Law* (against all defendants); (4) breach of contract

Case 2:14-cv-05419-DRH-GXB   Document 21-1   Filed 02/03/15   Page 25 of 52 PageID #: 295

Page 4

2014 U.S. Dist. LEXIS 152053, *9; 201 L.R.R.M. 3317

(against Atlantic Yards Co., Brooklyn Arena, FCRC, FCE, and BUILD); (5) breach of unilateral contract (against Atlantic Yards Co., Brooklyn Arena, FCRC, FCE, and BUILD); (6) promissory estoppel (against Atlantic Yards Co., Brooklyn Arena, FCRC, FCE, Jane Marshall, James Caldwell, and BUILD); and (7) unjust enrichment (against the Jones Defendants).

The defendants seek dismissal of the following claims: (1) the *§ 349*, breach of contract, breach of unilateral contract, and promissory estoppel claims against Atlantic Yards Co., Brooklyn Arena, FCRC, and FCE (and the *§ 349* and promissory estoppel claims against Marshall) made by 11 plaintiffs who do not contend that they received (or have no recollection of receiving) promises that they would get union jobs upon completing PATP; (2) the *§ 349* claim asserted against Ratner by all plaintiffs; (3) the *§ 349* claim asserted against the Jones Defendants by all plaintiffs; (4) the FLSA and NYLL claims asserted against all defendants by all plaintiffs; and (5) the unjust enrichment claim asserted against the Jones Defendants [*10] by all plaintiffs.

## DISCUSSION

*A. Standards of Review*

*1. Summary Judgment*

A party is entitled to summary judgment upon showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Adams v. Dep't of Juvenile Justice of City of New York, 143 F.3d 61, 65 (2d Cir. 1998)*. In determining whether material facts are in dispute, all ambiguities are resolved and all inferences are drawn in favor of the non-moving party. *See Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)*. "When the moving party has carried its burden under *Rule 56(c)*, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*. "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by . . . citing to particular parts of materials in the record . . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Fed. R. Civ. P. 56(c)(1)*. Because "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create [*11] a genuine issue of fact," *Kerzer, 156 F.3d at 400*, the non-moving party cannot survive a properly supported motion for summary judgment by resting on the pleadings "without offering 'any significant probative evidence tending to support the complaint.'" *Anderson, 477 U.S. at 249* (quoting *First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968))*.

*2. Intervention*

Pursuant to *Federal Rule of Civil Procedure 24(a)*, a putative intervenor of right must "(1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." *Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 176 (2d Cir. 2001)*. "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." *Security Pacific Mortg. and Real Estate Servs., Inc. v. Republic of Philippines, 962 F.2d 204, 208 (2d Cir. 1992)* (quoting *Farmland Dairies v. Comm'r of N.Y. Dep't of Agriculture, 847 F.2d 1038, 1043 (2d Cir.1988))*.

For a party to intervene in a case as of right pursuant to *Rule 24(a)(2)*, that party must have an interest in the case that is "'direct, substantial, and legally protectable.'" *United States v. Peoples Benefit Life Ins. Co., 271 F.3d 411, 415 (2d Cir. 2001)* (quoting *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990))*. According to the Second Circuit, "[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Washington Elec., 922 F.2d at 97*.

Intervention may also be granted on a permissive basis under *Federal Rule of Civil Procedure 24(b)*. [*12] *Rule 24(b)* provides in part:

On timely motion, the court may permit anyone to intervene who . . . has a claim or

Page 5

2014 U.S. Dist. LEXIS 152053, *12; 201 L.R.R.M. 3317

defense that shares with the main action a common question of law or fact . . . . In exercising its discretion the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties rights.

Permissive intervention is thus within the court's broad discretion. *See U.S. Postal Service v. Brennan, 579 F.2d 188, 192 (2d Cir. 1978)*. In exercising that discretion, courts consider factors that include "'the nature and extent of the intervenors' interests,' the degree to which those interests are 'adequately represented by other parties,' and 'whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Id.* (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc., 797 F.2d 85, 89 (2d Cir. 1986))*. "The test is flexible and courts generally look at all of the factors rather than focusing narrowly on any one of the criteria." *Mass. Bricklayers and Masons Funds v. Deutsche Alt-A Sec., 273 F.R.D. 363, 365 (E.D.N.Y. 2011)*.

B. *Analysis*

1. *Plaintiffs' Breach of Contract, Promissory Estoppel and § 349 Claims*

There is no motion with respect to several of the plaintiffs' claims. For example, the contract claims against the BUILD Defendants and [*13] the contract claims of eight plaintiffs against the Forest City Defendants are not addressed by the motions before me. However, the Forest City Defendants seek to dismiss the § 349, breach of contract, breach of unilateral contract, and promissory estoppel claims against Atlantic Yards Co., Brooklyn Arena, FCRC, and FCE (and the § 349 and promissory estoppel claims against Marshall) made by 11 plaintiffs who do not directly contend that they received (or have no recollection of receiving) promises or representations that they would receive union jobs upon completing PATP. They also seek to dismiss the § 349 claim asserted against Ratner. The Jones Defendants seek to dismiss the § 349 claim asserted against them.

*Section 349 of the New York General Business Law* prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *N.Y. Gen. Bus. Law § 349(a)*. It authorizes a private cause of action by anyone injured by

a violation of the section. *See id. § 349(h)*. To establish a prima facie case under *§ 349*, a plaintiff must show: (1) the defendant's deceptive acts were directed at consumers; (2) the defendant's acts are misleading in a material way; and (3) an injury resulting from the defendant's acts.[3] *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995)*. Additionally, "the [*14] transaction in which the consumer is deceived must occur in New York." *Goshen v. Mutual Life Ins. Co. of New York, 98 N.Y.2d 314, 324, 774 N.E.2d 1190, 746 N.Y.S.2d 858 (2002)*. As for the second element of the prima facie case, "it is not necessary under the statute that a plaintiff establish the defendant's intent to defraud or mislead, [and] . . . the statute does not require proof of justifiable reliance." *Oswego Laborers', 85 N.Y.2d at 26*. "[A] plaintiff . . . must show that the defendant engaged in a material deceptive act or practice that caused actual . . . harm" only if she is seeking compensatory damages. *Id.*

> 3   In an order dated June 18, 2012, I concluded that the plaintiffs met the first requirement for establishing a prima facie case under *§ 349* because they adequately alleged they were consumers of a training program. *See Apple v. Atl. Yards Dev. Co., LLC, 11-CV-5550, 2012 U.S. Dist. LEXIS 84281, 2012 WL 2309028 (E.D.N.Y. June 18, 2012)*, DE 38, at 7-9. I declined to hold that *§ 349* cannot apply in the employment context. *Id.*

New York law requires a moving party to establish the following elements for a breach of contract claim: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 177 (2d Cir. 2004)*. "A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: [*15] (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance." *Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000)*.

The Forest City Defendants argue that because 11 plaintiffs testified that they either did not receive or have no recollection of receiving any promises from these defendants that in return for completing the PATP, they

Page 6

2014 U.S. Dist. LEXIS 152053, *15; 201 L.R.R.M. 3317

would receive union memberships and/or jobs at the Atlantic Yards site, the claims of those plaintiffs must be dismissed. Plaintiffs counter that promises were in fact made to those plaintiffs, several of whom attended the orientation session at which, according to other plaintiffs who were also present, Marshall promised PATP participants union jobs. Moreover, these plaintiffs argue that their claims against the Forest City Defendants are valid because Caldwell also made the promises to them, and he acted as an agent of the Forest City Defendants.

Defendants contend that Caldwell cannot be considered an agent of the Forest City Defendants because he "was advised by Forest City as early as June 2010 that PATP participants could not receive union membership simply as a result of completing the PATP." FCD Memo. at 22 n.7 (citing [*16] Caldwell Dep. at 197-202). In countering this argument, plaintiffs contend both that it depends on Caldwell's credibility, which they promise to attack, and that it is contradicted by the contract executed by Caldwell (on behalf of BUILD) and Forest City Ratner Companies' General Counsel *after* Forest City allegedly told Caldwell that PATP graduates would not be getting jobs. P. Opp. at 28. The contract provides that PATP participants who successfully complete the program "will enter an apprenticeship in a construction trade" and "will feed the approximate 120 openings allocated to Brooklyn by the Building Construction Trades Council" or fill "openings accessible through . . . BUILD and its corporate partner, Forest City Rather Companies." FCD Memo., Ex. 1 at 1881.

The question whether Caldwell was an agent of the Forest City Defendants cannot properly be resolved as a matter of law. A jury that has the benefit of, *inter alia*, seeing and hearing Caldwell's testimony will determine the facts that bear on the agency issue. Similarly, to the extent the plaintiffs' claims are based on Marshall's alleged statements, a jury will determine if the promises were made based on, among other things perhaps, [*17] the testimony of those who were present. The latter group will presumably include plaintiffs who will testify that promises were made, and I see no reason why other plaintiffs who cannot recall such promises should be categorically precluded from relying on the testimony of those who do.

I grant the motion to dismiss the plaintiffs' *§ 349* claims against Ratner and the Jones Defendants. The plaintiffs' acknowledge that they have asserted such a

claim against Ratner, see P. Opp. at 28, but do not address his or the Jones Defendants' arguments for dismissal. Accordingly, these claims are deemed abandoned and are dismissed. *See, e.g., Ret. Bd. of Policemen's Annuity & Ben. Fund of Chi. v. Bank of N.Y. Mellon, 914 F. Supp. 2d 422, 2012 WL 1108533, at *8 (S.D.N.Y. 2012); Pibouin v. CA, Inc., 867 F. Supp. 2d 315, 2012 WL 1118629, at *9 (E.D.N.Y. 2012); Lipton v. Cnty. of Orange, N.Y., 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004)* ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

## 2. *The FLSA and NYLL Claims*

The FLSA applies to an "employer," which includes those "acting directly or indirectly in the interest of an employer in relation to an employee." *29 U.S.C. § 203(d); see also Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 140 (2d Cir. 2008).* In order to effectuate the remedial purposes of the act, the FLSA's broad definitions cover parties who might not qualify under a strict application of traditional agency law principles. *Barfield, 537 F.3d at 141* (citing [*18] *Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992)).* Both federal regulations and Second Circuit precedent "recognize the possibility of joint employment for purposes of determining FLSA responsibilities." *Id.; see also 29 C.F.R. § 791.2(a).*

The Supreme Court has adopted an "economic reality" test for determining who qualifies as an employer under the FLSA.[4] *See Barfield, 537 F.3d at 141* (citing *Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961)).* Rather than a single test, however, the economic reality test has involved "different sets of relevant factors based on the factual challenges posed by particular cases." *Id. at 142.* Decisions have identified different factors, while emphasizing that those factors were not exhaustive. *See id. at 142-43.* Ultimately, "employment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id. at 141-42.*

---

4   I do not address the NYLL separately from the FLSA except where explicitly addressed by the parties. The NYLL's definitions are nearly identical to the FLSA's, *see N.Y. Lab. Law § 2(7),* and courts use the same tests to determine joint

Case 2:14-cv-05419-DRH-GXB   Document 21-1   Filed 02/03/15   Page 28 of 52 PageID #: 298

Page 7

2014 U.S. Dist. LEXIS 152053, *18; 201 L.R.R.M. 3317

employment under both the NYLL and the FLSA, *see, e.g., Wilk v. VIP Health Care Servs., Inc., No. 10-CV-5530 (ILG) (JMA), 2012 U.S. Dist. LEXIS 21630, 2012 WL 560738, at \*6 n.9 (E.D.N.Y. Feb. 21, 2012).*

The Second Circuit has articulated various factors that inform the evaluation of the economic realities in a given case. They [*19] include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984).* In *Zheng v. Liberty Apparel Company,* it held that satisfying *Carter*'s test for "formal control" over workers is sufficient but not necessary to establish joint employment because an entity that lacks formal control may nevertheless exercise "functional control," as reflected by six non-exclusive factors: (1) whether the purported joint employer's premises and equipment were used for plaintiffs' work; (2) whether plaintiffs belonged to an organization that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete job that was integral to the purported joint employer's process of production; (4) whether responsibility under the contracts could pass from one vendor to another without material changes; (5) the degree to which the purported joint employer supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the purported [*20] joint employer. *355 F.3d 61, 72 (2d Cir. 2003).* A court is "also free to consider any other factors it deems relevant to its assessment of the economic realities." *Id. at 71-72.*[5]

Stripped of hyperbole, the plaintiffs' argument that the Forest City Defendants[6] and BUILD were joint employers for the purposes of the FLSA and the NYLL relies on numerous interactions, joint actions, and shared motivations among those defendants. The plaintiffs have adduced facts that reasonably support the inferences that the Forest City Defendants created and funded BUILD; that together they created the PATP program; that the Forest City Defendants were intimately involved in the design, administration and implementation of that program; and that BUILD and the PATP program, and the goodwill they were created to generate, were an integral component of the success of the Atlantic Yards project, which at the time was facing strong opposition from some segments of the surrounding communities. A rational jury could find from the facts advanced by the plaintiffs that the economic reality was the Forest City Defendants and BUILD were joint employers of the plaintiffs.

> 5    The Department of Labor's regulations regarding joint employment provide additional guidance. [*21] They identify some situations where "a joint employment relationship generally will be considered to exist." *29 C.F.R. § 791.2(b).* These situations are:
>
> > (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
> >
> > (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
> >
> > (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.
>
> *Id.* (footnotes omitted).
>
> 6    In this paragraph "Forest City Defendants" refers only to the corporate entities in that group; the status of Ratner and Marshall as "employers" for the purposes of the FLSA claim is discussed below.

Ratner and Marshall both seek dismissal of the FLSA and NYLL claims against them on the ground that a jury could not find that they personally were the plaintiffs' employers. The same "economic reality" test discussed above applies to the determination of whether [*22] a manager or owner of a company that employs a plaintiff is also an "employer" under the FLSA. *Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013).*

> Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate "employer"

Case 2:14-cv-05419-DRH-GXB   Document 21-1   Filed 02/03/15   Page 29 of 52 PageID #: 299

Page 8

2014 U.S. Dist. LEXIS 152053, *22; 201 L.R.R.M. 3317

status. Instead, to be an "employer," an individual defendant must possess control over a company's actual "operations" in a manner that relates to a plaintiff's employment. It is appropriate ... to require some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation--even if this appears to establish a higher threshold for individual liability than for corporate "employer" status.

...

A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment. Although this does not mean that the individual "employer" must be responsible for managing plaintiff employees--or, indeed, that he or she must have directly come into contact with the plaintiffs, their workplaces, [*23] or their schedules--the relationship between the individual's operational function and the plaintiffs' employment must be closer in degree than simple but--for causation. .. [T]he answer in any particular case will depend, of course, on the totality of the circumstances ...

*Id.* at 109-110.

Applying this standard to the facts in the record, I grant Ratner's motion but deny Marshall's. The facts on which plaintffs rely to establish Ratner's individual liability -- which include a brief discussion of the PATP program with the Brooklyn Borough President -- lack the requisite relationship to the plaintiffs' alleged employment. On the other hand, a jury could reasonably find that Marshall was centrally involved in BUILD's programmatic activities, and specifically the PATP. According, her motion to for summary judgment dismissing the FLSA and NYLL claims against her individually is denied.

The BUILD Defendants contend that BUILD is

exempt from coverage under the FLSA because it is a not-for-profit organization with no commercial activities. The FLSA covers enterprises engaged in commerce, and as defined in the statute an "enterprise" must perform activities "for a common business purpose." *29 U.S.C. §§ 203(r), 206(a), and 207(a); see also Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 306, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985)*. This [*24] claimed exemption from liability implicates the same factual dispute that precludes a determination as a matter of law of the question whether the Forest City Defendants and the BUILD defendants were joint employers. Viewed in isolation, BUILD's creation and operation of a training program to assist members of the Downtown Brooklyn communities obtain job skills (and, eventually, jobs) hardly supports the argument that it was an enterprise engage in commerce. But a jury could reasonably find that the Forest City Defendants had such control over the creation, operation and existence of BUILD that, in essence, BUILD and the PATP program and goodwill they were intended to foster in the local communities were integral to the commercial success of the Atlantic Yards project itself, that is, that their activities were performed for that common business purpose.

The classroom training portion of the PATP, however, which preceded the plaintiffs' work at the Staten Island site, is not compensable under the FLSA. "The Supreme Court has defined 'work' to include 'physical or mental exertion . . . controlled or required by the employer and pursued necessarily and primarily for the benefit of the [*25] employer and his business.'" *Blair v. Wills, 420 F.3d 823, 829 (8th Cir. 2005) (quoting Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598, 64 S. Ct. 698, 88 L. Ed. 949 (1944))* (cited in *Velez v. Sanchez, 693 F.3d 308, 330 (2d Cir. 2012))*. Several plaintiffs testified that they benefitted from the classroom training they received in the PATP, and no one could reasonably dispute that they received valuable job training. In the face of that reality, it cannot reasonably be said that the defendants' general interest in the existence of the PATP program is enough for a jury to conclude that plaintiffs pursued their training necessarily and primarily for the benefit of the defendants.

Furthermore, the classroom portion of the PTAP is not compensable under the Portal-to-Portal Act, which provides:

[N]o employer shall be subject to any

Page 9

2014 U.S. Dist. LEXIS 152053, *25; 201 L.R.R.M. 3317

liability or punishment under the [FLSA] on account of the failure of such employer to pay an employee . . . for or on account of . . . activities which are preliminary to or postliminary to [the principal activity or activities which such employee is employed to perform],which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

*29 U.S.C. § 254.* The Supreme Court, in the companion cases of *Steiner v. Mitchell, 350 U.S. 247, 76 S. Ct. 330, 100 L. Ed. 267 (1956),* and *Mitchell v. King Packing Co., 350 U.S. 260, 76 S. Ct. 337, 100 L. Ed. 282 (1956),* held that the term [*26] "principal activity or activities" included "activities which are 'an integral and indispensable part' of the principal activities." *Steiner, 350 U.S. at 253.* In *Steiner,* the Court held that workers' showering and changing clothes while at a plant where toxic chemicals were extensively used were integral and indispensable to the workers' principal activities and therefore compensable. *Id. at 253-54.* In *King Packing,* the Court held that knifemen's sharpening their knives outside of work hours in a meat-packing plant was indispensable to the principal activity. *350 U.S. at 262-263.*

The plaintiffs argue that the PATP classroom training was not "preliminary" to their principal work because the classroom "training occur[red] weeks before" that work. P. Opp. at 21. The First Circuit applied the Portal-to-Portal Act to classroom time in *Ballou v. General Electric Co., 433 F.2d 109 (1st Cir. 1970).* The court held that class time required for "work training" outside the employees' 40-hour workweek was preliminary or postliminary to their regular activity. *433 F.2d at 110.* In *Atkins v. General Motor Corp,* the Fifth Circuit examined *Ballou* and found that training that required workers to perform services which had no relation their regular, principal work was compensable:

> While study to perform a job may be preliminary or postliminary to that [*27] activity, study unrelated to the employee's present job is *not* preliminary or postliminary to that activity. The Portal-to-Portal Act does not apply, and

the time may or may not be compensable. We think that any other interpretation would lead to exclusions under the Act that Congress never intended.

*701 F.2d at 1130.*

This case presents a different employment context from *Ballou* and *Atkins.* The plaintiffs here took part in the classroom portion of the PTAP program before working at the Staten Island site and in preparation for allegedly promised union work. Thus, the classroom study was related to future work, but that does not alter the fact that the classroom training was preliminary to the future principal work. Moreover, the classroom training, which consisted of a life skills class based on the book *The Seven Habits of Highly Effective People* and "basic lectures about construction techniques," was neither integral and nor indispensable to the primary hands-on work to follow.

Pursuant to the NYLL, the BUILD Defendants are not liable for the first 10 weeks of the 15-week PATP. *12 N.Y.C.R.R. § 142-3.12(c)(6)* provides that participants in a bona fide nonprofit work training program such as the PATP are "learners" for the first 10 [*28] weeks of the program and thus not employees:

> (i) The term learner means a person in a nonprofitmaking institution who is participating in a bona fide training program for an occupation in which such person is employed, the required training period for which is recognized to be at least two weeks.
> (ii) A bona fide training program is one which must involve either formal instruction or on-the-job training, during a period when the learner is entrusted with limited responsibility and is under supervision or guidance.
> (iii) No person shall be deemed a learner at an institution in an occupation for which he or she has completed the required training; and in no case may a person be deemed a learner in such an occupation at an institution after 10 weeks of such training, except that a person may be deemed a learner for a longer period if the commissioner finds after investigation that

for the particular occupation a minimum of proficiency cannot be acquired in 10 weeks.

Finally, I conclude that, as a matter of law, the Jones Defendants were not joint employers of the plaintiffs. When it comes to determining employer status under the FLSA, control is key. At first blush, a review of the various [*29] *Carter* and *Zheng* factors supports an inference that the Jones Defendants had a significant degree of control over the plaintiffs: they supervised the plaintiffs and controlled their work and the conditions of employment at the Staten Island site; it was their worksite, and their equipment was used for the plaintiffs' work; and the PATP was effectively shifted to their worksite for its hands-on component. But there is no genuine issue with regard to the facts that demonstrate a fundamental *lack* of control on the part of the Jones Defendants over the operation of the PATP program. They stepped in to provide the venue for the hands-on portion of the training only after the other defendants' experienced difficulty in securing a site for it. The record conclusively establishes that the activities of the Jones Defendants were controlled by the other defendants. From the ultimate selection of the work site, to the decision not to compensate the plaintiffs, to the decision to shut down the hands-on training altogether, all meaningful decisions were made by the other defendants. The Jones Defendants did not select the participants who worked at the Staten Island site, did not maintain records, [*30] could not fire the participants, and had no say over how long the plaintiffs would work there. They did not exercise common control over the hands-on component of the PTAP. The economic realities compel the conclusion that the Jones Defendants were not joint employers of the plaintiffs.

### 3. *Unjust Enrichment Claim*

To make out a claim unjust enrichment Under New York law, a plaintiff must establish that: (1) the defendant benefitted; (2) the benefit came at the plaintiff's expense; and (3) "equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). "'The theory of unjust enrichment lies as a quasi-contract claim' and contemplates 'an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties.'" *Georgia*

*Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516, 973 N.E.2d 743, 950 N.Y.S.2d 333 (2012) (quoting *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142, 907 N.E.2d 268, 879 N.Y.S.2d 355 (2009)). Proof of an enforceable contract, either oral or written, precludes recovery under the theory of unjust enrichment. *See Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572, 841 N.E.2d 742, 807 N.Y.S.2d 583 (2005) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

The Jones Defendants argue that the "Off Site Hands on Agreement," *see* FCD Memo, Ex. F, which was signed by all PATP participants [*31] who worked at the Stated Island site, bars the plaintiffs' unjust enrichment claim. The agreement provided that workers would "participate in an *unpaid* internship for the purposes of hands on experience to engage in activities related to construction work." Jones 56.1 ¶ 31 (emphasis added). As such, the Jones Defendants contend that the issues "in dispute are governed by an express contract" such that the plaintiffs may not maintain their action for unjust enrichment. JD Reply at 6 (citation omitted).

Plaintiffs argue in response that the contract is unenforceable for failing to provide compensation in return for plaintiffs' work. However, as discussed earlier, in the training context, lack of compensation is allowable where the "work" in question was preliminary to but not integral or indispensable to other principal work activities. Moreover, the plaintiffs based their complaint on an earlier contract in which they are allegedly promised union membership, as opposed to monetary compensation, in exchange for their participation in the PATP. The plaintiffs' unjust enrichment claim is barred by the existence of an express contract and denied.

### 4. *The Motion to Intervene*

Michael Thomas has [*32] not satisfied the requirements for either intervention as of right or permissive intervention. First, with respect to timeliness, a district court has discretion to evaluate the timeliness of a motion to intervene in light of "all the circumstances," including "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a

2014 U.S. Dist. LEXIS 152053, *32; 201 L.R.R.M. 3317

finding of timeliness." *United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994)*.

Thomas claims that he was unaware of the instant litigation until December 2013, and he filed his motion to intervene three months later. Even assuming the truth of his claim, I find that the timeliness requirement is not met because permitting Thomas to intervene at this late stage would result in significant prejudice to existing parties. This litigation has been pending for almost three years. The parties have concluded fact discovery and all but concluded expert discovery. Thomas requests an extension of time for discovery, but I find that further delay at this point will cause substantial prejudice to the existing parties. Moreover, [*33] Thomas asserts that his claims are "unique." "[C]ase law is clear that if an intervenor attempts to introduce collateral issues in a proceeding, a court may be justified in denying a motion to intervene based on undue delay or prejudice." *FTC. v. First Capital Consumer Membership Servs., Inc., 206 F.R.D. 358, 366 (W.D.N.Y. 2001)* (citing *The Great Atlantic & Pacific Tea Co., Inc. v. Town of East Hampton, 178 F.R.D. 39, 44 (E.D.N.Y. 1998))*.

In addition, Thomas will suffer minimal prejudice, if any, if his motion to intervene is denied. He states otherwise but does not specify what prejudice he will suffer. The instant litigation will have no preclusive effect on his claims. *See Marvel Characters, Inc. v.*

*Simon, 310 F.3d 280, 288-89 (2d Cir. 2002)*. Although Thomas's failure to receive notice of the litigation may militate in favor of a finding of timeliness, having considered his motion's timeliness in light of all the circumstances, I conclude that he has failed to satisfy the first requirement under *Rule 24(a)*. As such, he may not intervene as of right and I need not consider *Rule 24(a)*'s remaining criteria. *See Disability Advocates, Inc. v. Paterson, No. 03-CV-3209, 2009 U.S. Dist. LEXIS 119710, 2009 WL 5185807, at *6, n. 14 (E.D.N.Y. Dec. 23, 2009)*. Finally, I also conclude that permissive intervention pursuant to *Rule 24(b)* would be inappropriate in this case since it would unduly delay and prejudice the adjudication of the original parties' rights.

CONCLUSION

The motions for summary judgment are granted in part and denied in part, as set forth above. The motion to intervene is denied.

So ordered.

John Gleeson, U.S.D.J. [*34]

Dated: October 27, 2014

Brooklyn, New York



**MARCELO DAVID LUSSI, et al., Plaintiffs, v. DESIGN-BUILD & ENGINEERING, INC., and ANDRES MARTINEZ, Defendants.**

**CASE NO. 09-23446-CIV-SEITZ/O'SULLIVAN**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

*2010 U.S. Dist. LEXIS 38780*

**April 19, 2010, Decided**
**April 20, 2010, Entered**

**SUBSEQUENT HISTORY:** Summary judgment granted by *Lussi v. Design-Build & Eng'g, Inc., 2012 U.S. Dist. LEXIS 14110 (S.D. Fla., Feb. 6, 2012)*

**COUNSEL:** [*1] For Marcelo David Lussi, Erick Madel Cruz, Adel Alvarado, Miguel Flores Villatoro, Ramon Prado, Antonio Matute Funes, Mario Varelo Rivero, Daniel Saenz, Juan Carlos Rojas, and all other similarly situated under 29 U.S.C. 216(B), Plaintiffs: Jamie H. Zidell, Miami Beach, FL.

For Design-Build & Engineering, Inc., Andres Martinez, Defendants: Dana Mason Gallup, LEAD ATTORNEY, Hollywood, FL.

**JUDGES:** PATRICIA A. SEITZ, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** PATRICIA A. SEITZ

**OPINION**

**ORDER GRANTING MOTION TO DISMISS**

THIS MATTER is before the Court on the Defendants' Motion to Dismiss Plaintiffs' Complaint or, In the Alternative, For a More Definite Statement [DE-9]. This is an action brought by nine plaintiffs on their own

behalf and others similarly situated under the Fair Labor Standards Act (FLSA) and the Florida Constitution for unpaid wages and overtime. Defendants move to dismiss the Complaint for three reasons: (1) Plaintiffs have not filed consents, pursuant to *29 U.S.C. § 216(b)*; (2) the Complaint alleges multiple causes of action in one count; and (3) the Complaint does not meet the pleading standards of *Federal Rule of Civil Procedure 8(a)(2)*. For the reasons set forth below, Defendants' motion is granted.

**1. [*2] Plaintiffs Must File Consents in Order to Proceed With a Collective Action**

Defendants argue that the Complaint should be dismissed because Plaintiffs have failed to file consents indicating that they have elected to pursue their claims on behalf of other individuals and thus have failed to comply with the requirements of the FLSA. Plaintiffs respond that consents are not necessary until the Court grants a motion to certify an opt-in class, which has not yet occurred. However, the plain language of the statute and the case law interpreting this language hold otherwise.

*Section 216(b)* states:

An action to recover [unpaid minimum wages or overtime wages] may be maintained against any employer

(including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*29 U.S.C. § 216(b).* This section is further clarified by *§ 256* of the Portal-to-Portal Act, which states:

In determining [*3] when an action is commenced for the purposes of section 255 of this title, an action commenced . . . under the Fair Labor Standards Act . . . shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action . . . it shall be considered to be commenced in the case of any individual claimant--

(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

(b) if such written consent was not so filed or if his name did not so appear--on the subsequent date on which such written consent is filed in the court in which the action was commenced.

*29 U.S.C. § 256.* Courts in this district that have considered whether the statutory language requires the named plaintiffs in an opt-in action to file consents have concluded it does. *Lira v. Arrow Air, Inc., Case No. 05-23273- Lenard, 2006 U.S. Dist. LEXIS 94935 (S.D.*

*Fla. April 17, 2006)*; *Lago v. Amoa Construction & Development Corp. 2008 U.S. Dist. LEXIS 85479, 2008 WL 4540062 (S.D. Fla. 2008)* (dismissing collective action where named plaintiff had not filed a consent and [*4] allowing individual plaintiff to proceed). [1] *Accord Hawkins v. Riverboat Services, Inc., 385 F.3d 1099, 1101 (7th Cir. 2004)*, *Bonilla v. Law Vegas Cigar Co., 61 F. Supp. 2d 1129, 1134 (D. Nev. 1999)*. Plaintiffs' reliance on *Allen v. Atlantic Richfield Co., 724 F.2d 1131, 1135 (5th Cir. 1984)* is misplaced because that was not a collective action, as this case is or purports to be. Plaintiffs reliance on *Cameron-Grant v. Maxim Healthcare Services, Inc., 347 F.3d 1240 (11th Cir. 2003)* is also misplaced because that case did not address the specific issue of whether named plaintiffs in a collective action must file written consents pursuant to *§ 216(b)*. Thus, Plaintiffs must either file their written consents or must proceed individually and not on behalf of others similarly situated.

1   The Court notes that Plaintiff's counsel was counsel in both of these cases and thus should well be aware of these holdings.

## 2. Multiple Causes of Action in One Count Must be Repled

Defendants also move to dismiss Plaintiffs' Complaint because it alleges multiple causes of action in a single count. Specifically, the one count appears to allege causes of action for a minimum wage violation of the FLSA, an overtime [*5] violation of the FLSA, and a violation of the Florida Constitution's minimum wage provision. Defendants further argue that it is not even clear if Plaintiffs are actually pursing a claim under the Florida Constitution. Plaintiffs respond that because the causes of action are all related, they need only plead one count. In order to promote clarity as to exactly which causes of action Plaintiffs are pursuing, Plaintiffs shall file an amended complaint alleging separate counts.

## 3. Plaintiffs Must Repled Their Allegations Relating to Commerce

Defendant also argues that the Complaint should be dismissed because it does not meet the pleading standard set out in *Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2008)*. In *Iqbal*, the Supreme Court stated that pleadings that "are no more than conclusions, are not entitled to the assumption of truth[;] they must be supported by factual allegations." *Ashcroft v. Iqbal, 129*

2010 U.S. Dist. LEXIS 38780, *5

*S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)*. Defendants argue that the Complaint does not meet this pleading standard regarding the allegations that Plaintiffs are engaged in or are employed in an enterprise engaged in commerce or the production of goods for commerce and as to allegations that Defendants grossed [*6] over $ 500,000 annually. Both of these allegations are necessary elements of a FLSA action. Plaintiffs allegations regarding these elements are that:

> Defendants' business activities involve those to which the Fair Labor Standards Act applies. . . . Both the Defendant's business and each Plaintiffs' work for the Defendants affected interstate commerce for the relevant time period substantially. Each Plaintiffs' work for the Defendant affected interstate commerce for the relevant time period because the materials that they used/handled on a constant and/or continual basis and/or that were supplied to them by the Defendants to use on the job moved through interstate commerce prior to and/or subsequent to each Plaintiff's use of the same. Each Plaintiff's work for the Defendants was actually in an/or closely related to the movement of commerce while the worked for the Defendants that the Fair Labor Standards Act applies to each Plaintiff's work for the Defendants. The Defendants are in the delivery business that transports merchandise and goods to the public and to several clients and provides services to multiple clients . . . for the relevant time period and has grossed, on information [*7] and belief, more than $ 500,000 annually for the relevant time period.

See Complaint P 10. Plaintiff asserts that these allegations are sufficient under *Federal Rule of Civil Procedure 8*.

In response to Defendants' argument that the pleadings do not comply with this standard, Plaintiffs, citing *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc., 2008 U.S. Dist. LEXIS 23007, *6 (M.D. Fla. 2008)*, point out that the relevant information to support these claims will most often be in the hands of the defendant. This is certainly true when it comes to alleging the annual revenue of Defendants. Thus, the revenue allegations in the Complaint are sufficient. However, the allegations regarding interstate commerce are conclusory and lacking in factual support. Therefore, the Complaint should be dismissed with leave to amend the allegations regarding commerce.

Accordingly, it is hereby

ORDERED that Defendants' Motion to Dismiss Plaintiffs' Complaint or, In the Alternative, For a More Definite Statement [DE-9] is GRANTED:

1. Plaintiffs must file consents by **May 7, 2010** or the collective allegations of the Complaint shall be deemed dismissed.

2. By **May 7, 2010,** Plaintiffs shall file an amended complaint [*8] in accordance with this Order, that sets out separate counts for each cause of action and that sets out factual allegations that support Plaintiffs' conclusions regarding involvement in commerce.

DONE and ORDERED in Miami, Florida, this 19th day of April, 2010.

/s/ Patricia A. Seitz

PATRICIA A. SEITZ

UNITED STATES DISTRICT JUDGE



**ANGEL PEREZ and others similarly situated, Plaintiffs, v. BRANDS MART SERVICE CORP., Defendant.**

**Case No.10-61203-CIV-O'SULLIVAN [CONSENT]**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

*2011 U.S. Dist. LEXIS 82708*

**July 28, 2011, Decided**
**July 28, 2011, Entered on Docket**

**COUNSEL:** [*1] For Angel Perez, on his own behalf and others similarly situated, Plaintiff: G Ware Cornell, Jr., Cornell & Associates, Weston, FL.

For Brands Mart Service Corp., a Florida Corporation, Defendant: Tamatha Suzanne Alvarez, LEAD ATTORNEY, Martin, Lister & Alvarez, PLC, Weston, FL; Robert L. Duston, Saul Ewing, LLP, Washington, DC; Robert C. Nagle, Saul Ewing LLP, Philadelphia, PA.

**JUDGES:** JOHN J. O'SULLIVAN, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** JOHN J. O'SULLIVAN

**OPINION**

**ORDER**

THIS MATTER is before the Court on the Defendant's Motion for Summary Judgment (DE# 39, 5/4/11). Having reviewed the motion, response and reply as well as the parties' respective statements of material facts and exhibits, including declarations and transcripts of depositions, and applicable law, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Summary Judgment (DE# 39, 5/4/11) is

GRANTED for the reasons set forth below.

**INTRODUCTION**

The plaintiff filed his Complaint seeking compensation for unpaid minimum wage compensation pursuant to the Fair Labor Standards Act, *29 U.S.C. §§ 201-219* (the "FLSA") as well as a claim for retaliatory discharge under the FLSA, *29 U.S.C. § 215(a)(2), (3)*. Complaint (DE# 1, 7/13/10). The plaintiff alleges [*2] that the defendant violated the FLSA by failing to pay him the federal minimum wage for the hours he spent in the stores under the Same Day Installation Program ("Program"). In the Fall of 2009, BrandMart instituted a new program for same day installation ("Same Day Installation Program" or "Program"). This Program was intended to counter the adverse effects of the recession on home installations, and to either increase or stop the decrease in the number of jobs for the Installation Teams.

The defendant contends that it did not violate the FLSA because the FLSA permits employees to be paid on a commission rather than hourly basis. The defendant paid the plaintiff in excess of the federal minimum wage due to its arrangement to pay the plaintiff 100% commission that covered all hours worked on both the productive work that generates compensation and the other non-productive hours (e.g. waiting time, meetings, training). The plaintiff claims that the defendant failed to

2011 U.S. Dist. LEXIS 82708, *2

pay him minimum wage ($7.25/hour) for hours spent in or at retail stores as part of the Program. The plaintiff contends that the defendant did not have the right under the FLSA to add hours or duties to his job (i.e. the [*3] Program requiring in-store time and tasks) without additional compensation beyond his commissions. Additionally, the plaintiff claims that his objections to the Program and his request for more money was an assertion of rights under the FLSA, and that he was fired in retaliation for that protected activity.

Additionally, the plaintiff alleges that the defendant violated the anti-retaliation provision of the FLSA by terminating his employment after he complained that he was not paid for the additional work assigned under the Program. Although an issue exists as to whether the plaintiff quit or was fired, the defendant maintains that it is entitled to summary judgment because the plaintiff cannot establish a prima facie case of retaliation and the plaintiff failed to carry his burden of proof on pretext. That is, the plaintiff failed to rebut the defendant's record evidence that the termination, if any, was based on a non-retaliatory ground, i.e. the plaintiff's abandonment of his job based on his refusal to perform the assigned work under the Program.

## FACTS[1]

> 1   The facts of the case are set forth with a view toward the evidence and the factual inferences therefrom in the light most favorable [*4] to the plaintiff, the non-moving party. *Key West Harbour Dev. Corp. v. Key West, 987 F.2d 723, 726 (11th Cir. 1993)*.

The plaintiff filed his Complaint seeking compensation for unpaid minimum wage compensation pursuant to the Fair Labor Standards Act, *29 U.S.C. §§ 201-219* (the "FLSA") as well as a claim for retaliatory discharge under the FLSA, *29 U.S.C. § 215(a)(2), (3)*. Complaint (DE# 1, 7/13/10).

Minimum Wage

The plaintiff was hired as an installer's helper for the defendant, BrandsMart Service Corp. His job duties were to assist an installer that installed electronics purchased from the defendant. The defendant paid the plaintiff on a commission basis. The plaintiff's commission included attending meetings, picking up parts at the warehouse or stores, driving time between jobs, time spent waiting

between jobs, and keeping the truck clean.

Installers were treated as full-time employees, working at least 30 hours per week, and thus, eligible for fringe benefits including major medical, vision and dental insurance, paid vacation and sick leave, and a 401(k) plan with a 2% Company match.

In the Spring of 2009, Gary Carlisle, a manager at BrandsMart, implemented a pilot program of same day [*5] installation to try to generate more installation jobs and the Program was formally initiated in September 2009. At no time during the Program, did Perez work more than 40 hours in a workweek, including all hours in the stores. The plaintiff did not go into a store every week.

The defendant guaranteed that all employees who were paid on commission, including the Installation Teams, received at least minimum wage for all hours worked up to 40 in a workweek. If an employee's commissions failed to meet the minimum wage, BrandsMart supplemented their compensation with "draw pay." During the plaintiff's employment, none of the electronics installation employees were ever paid draw pay, because their compensation far exceeded minimum wage. Assuming a forty hour week, the plaintiff's effective rate of pay was over $16 per hour, or more than twice the minimum wage (i.e. $6.55 between 5/08-7/25/09; $7.25 thereafter).

Objections to the Same Day Installation Program/Retaliation

When the Program began in the Fall of 2009, the plaintiff says that when they went to the store he and the Installer, Charlie Freeman, would walk in and "If there's nothing, we can hang out outside, stay in the truck. Just [*6] waiting for who knows?" (Perez Depo. p. 39) The plaintiff's perception was that he did not need to stay in the T.V. Department and that only his Installer had anything to do with the salespeople. (Id. at p. 39-40).

Perez' perception was that the Program changed sometime in 2010. His primary source of information was the Installer with whom he worked. The plaintiff originally claimed that the Installer told him that they would need to do merchandising and other tasks in the T.V. Department, but later changed his description of what the Installer told him, stating that they were required to be inside the store, in the T.V. Department, working

2011 U.S. Dist. LEXIS 82708, *6

with the salespeople.

Perez claims that he did not have any objection to being required to go inside the stores, waiting around the T.V. Department and talking to the salesmen or customers, even if he did not receive additional compensation, because that was what he was doing for most of the Program. (Id. at p.125-27) He objected to the Program because it would require him to work in the store without getting paid. (Id. at p. 44, 126-27). The plaintiff never performed any tasks in the store. (Id. at pp. 47-49). The plaintiff said he "didn't give a [*7] chance until they pay me for it." (Id. at p. 49).

In March 2010, the plaintiff spent one day waiting in the truck, refusing to accompany the installer into the Deerfield Beach store. In subsequent discussions with his supervisors, the plaintiff made it clear that he would not do what he was being asked, or even go into the stores to wait for jobs, unless he was given more money. (Id. at pp. 51-54, 57-58, 64-65)

The plaintiff objected to the Program in the following ways: 1) his initial note of 5 hours at a store on 2/26/10 for which he asked to be paid $100 ($20/hour), then notes of "free" on subsequent submissions; his two discussions with Gary Carlisle; his call to Human Resources on April 8, 2010; and his meeting with Messrs. Adamo, Carlisle and Pena on April 9, 2010. The plaintiff did not mention the FLSA in any of these discussions.

On April 9, 2010, the plaintiff, and Cosmo Adamo, Vice President of Service at BrandsMart, Gary Carlisle, a manager at BrandsMart, and Edmundo ("Mundy") Pena, the General Manager of Service, participated in a meeting at the Service Center in Mr. Adamo's office, which lasted approximately 30-45 minutes. Mr. Adamo did most of the talking during the meeting. [*8] (Id. at pp. 66-67; Carlisle Depo. at pp. 54-56, 59; Adamo Depo. at pp. 9-10; Pena Decl. ¶ 5). The plaintiff explained that "he did not want to go into the store, he didn't think it was fair. He didn't think it was fair that he wasn't getting paid for going into the store." (Perez Depo. at p. 9)

Mr. Adamo said, "[I]t doesn't seem like you're understanding or that you are going to do what we are discussing here today. [Mr. Perez] says I am not going to the store, I am not going to work for free." (Adamo Depo. at pp. 10-11).

Gary Carlisle testified "[a]t the end of the meeting,

Adamo told Perez if he was unwilling to go into the store that he could leave his badge and go." Carlisle Decl. ¶ 27 (DE# 39-9, 5/4/11).

There was no discussion of what assignments or tasks, if any, he would be expected to perform while in the stores, other than Adamo mentioning the use of stickers to promote Installation services. The understanding of Adamo, Carlisle and Pena was that the plaintiff was refusing to go in the store at all, just as he had done on April 2, without additional pay. (Adamo Decl. ¶¶ 19-21; Carlisle Depo. at pp. 57-60; Carlisle Decl. ¶ 26 ; Pena Decl. ¶ 5; Perez Depo. at 68-69).

Mr. Adamo [*9] stated that "I said I need you to please go back to work, please follow your schedule and please follow your tasks as Gary [Carlisle] assigned to you. [Mr. Perez] said I am not going into the store and he approached the doorway in the room." (Id.) "As he approaches the door, I said if you are leaving us, we need for you to leave us your badge. [Mr. Perez] says I am not leave you my badge. He says I am going to go across the street to HR. I said okay, if that is what you want to do, you can do that, too. And he walked out the door, my office door." (Id. at pp. 11-12).

Mr. Carlisle's recollection is that Mr. Adamo told the plaintiff "if you are not going to participate in the program, then you can leave your badge and go" and the plaintiff responded "I can't do that or I refuse to do that" or something to that effect. (Carlisle Depo. at p. 59).

In response to the plaintiff's statement that "I don't work unless you pay me," the plaintiff states that Mr. Adamo replied "it's clear you don't want to do what we ask you to do. So from now on, you're no longer working for us, please return your badge, and good luck." (Perez Depo. at p. 71).

All three managers present were surprised when Mr. Perez [*10] walked out, and did not know whether Mr. Perez was going to HR to complain or to quit. (Adamo Depo. at p. 12; Adamo Decl. ¶¶ 22,24; Carlisle Decl. ¶ 27; Pena Decl. ¶¶ 7-8). Mr. Pena went after Mr. Perez and told him to "think about what you're doing," i.e. whether he really wanted to quit, and if the plaintiff was actually going to leave, then he would need to return his uniforms. The plaintiff responded "I understand." (Pena Decl. ¶ 8).

On April 23, 2010, HR processed the plaintiff's

termination for job abandonment after he did not return to work. The first time the Vice President of HR was aware that the plaintiff was claiming he had been fired was at the appeal of his denial of unemployment compensation. (Witczak Decl. ¶ 23; Adamo Decl. ¶¶ 23-24; Carlisle Decl. ¶ 26).

The plaintiff did not mention the FLSA when he communicated his objections to the Program and his refusals to work for free with Messrs. Carlisle and Adamo as well as HR representatives. Defendant's Statement of Material Facts ¶¶ 25-26, 28-29, 30-31. (DE# 39-1, 5/4/11)

## LEGAL ANALYSIS

### I. STANDARD OF REVIEW

The court, in reviewing a motion for summary judgment, is guided by the standard set forth in *Federal Rule of Civil Procedure 56*( [*11] c), which states, in relevant part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Fed. R. Civ. P. 56(c)*. The moving party bears the burden of meeting this exacting standard. *Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*; *Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)*. That is, "[t]he moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991)* (quoting *Celotex, 477 U.S. at 323*). In assessing whether the moving party has satisfied this burden, the court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the [*12] non-moving party. *Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994)*; *Sheckells v. Agv-Usa Corp., 987 F.2d 1532, 1534 (11th Cir. 1993)*; *Browning v. Peyton, 918 F.2d 1516, 1520 (11th Cir. 1990)*; *Clemons v. Dougherty County, Ga., 684 F.2d 1365, 1368 (11th Cir. 1982)*; *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)*(per curiam). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. *Reich v. John Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997)*. If the record presents factual issues, the court must deny the motion and proceed to trial. *Adickes, 398 U.S. at 157*; *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*.

Despite these presumptions in favor of the non-moving party, the court must be mindful of the purpose of *Rule 56* which is to eliminate the needless delay and expense to the parties and to the court occasioned by an unnecessary trial. *Celotex, 477 U.S. at 322-323*. Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures. Id. As the Supreme Court noted in Celotex,

> [T]he plain language of *Rule 56*( c) [*13] mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Id. at 322-323*. Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. There must be evidence on which the jury could reasonably find for the non-movant. *Anderson, 477 U.S. at 251*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*.

## II. DISCUSSION

### A. Mimimum Wage

Plaintiff seeks recovery of minimum wage compensation under the FLSA in Count I. The plaintiff

acknowledges that "Plaintiff's employment as an outside installer with the Defendant provided for compensation on a commission basis" and claims that the defendant failed to pay the plaintiff for all hours worked in the store. (Complaint at ¶ 8-9).

The plaintiff understood that he was paid "a hundred [*14] percent on commission" and that part of his job requirements, which were covered by his commissions, included attending meetings, picking up parts at the warehouse or stores, driving time between jobs, time spent waiting between jobs, and keeping the truck clean. (SMF ¶ 6, Perez Depo. at pp. 32-33).

When the Program began in September 2009, the plaintiff did not mind hanging around the stores. In February or March of 2010, when the plaintiff perceived that the Program was changing, the plaintiff complained that he wanted more money to go into the stores, and objected that he should not have to "work for free." (SMF ¶¶ 21-22). Despite repeated efforts by others to explain the nature of commission compensation, the plaintiff maintained that he was not willing to participate in the Program, and in particular objected to "physically working" in the stores without additional pay.

1. The Plaintiff Was Paid Well-Above Minimum Wage for all Hours Worked, Including the Time He Spent in Stores, under a Lawful Commission Arrangment.

The FLSA minimum wage provision requires employers to pay employees a minimum wage of not less than $7.25 an hour. [2] *29 U.S.C. §206(a)(1)(C)*. The federal minimum wage [*15] provision is not violated

> so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement.

*United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 490 (2d Cir. 1960)*; see *Klinedinst v. Swift Investments, Inc., 260 F.3d 1251, 1256 (11th Cir. 2001)*(analyzing the commission exemption for overtime compensation and explaining that the regular rate of pay is calculated by dividing all of the employer's total compensation for the workweek by the number of hours worked); see also *Walters v. American Coach Lines of*

*Miami, Inc., 569 F. Supp. 2d 1270, 1300 (S.D. Fla. 2008)* ("[I]t is the workweek as a whole rather than each individual hour within a workweek that is the relevant unit for determining compliance with the minimum wage requirement.") (citations omitted); *29 C.F.R. §§ 778.117 et seq.* ("Commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate....")

> 2   The [*16] applicable federal minimum wage during the plaintiff's employment increased from $6.55 per hour from May 2008 until July 25, 2009, to $7.25 per hour for the duration of the plaintiff's employment.

The defendant acknowledges that the plaintiff was entitled to minimum wage for all hours worked (other than breaks) from the time he started at the warehouse, store or customer's home for his first job or to pick up parts, any hours spent in the stores under the Program regardless of whether he was hanging around or performing tasks and until he finished his last job. Memorandum of Law in Support Defendant's Motion for Summary Judgment (DE# 39-2 at 6; 5/4/11) Travel time between jobs, waiting for customers, and hours spent in the stores under the Program were included.

There is no dispute that the plaintiff was paid a commission. There is no claim for overtime pay and the plaintiff does not assert that the time he spent in the stores caused him to work more than 40 hours. The plaintiff averaged 35 hours or less and never more than 40 hours per week. (Carlisle Decl. ¶¶ 12, 16-17) During his entire employment, the plaintiff's compensation always exceeded the minimum wage. During the 10 pay periods [*17] when he was in the stores during the Program, his average weekly commissions were $1,345, which is an effective hourly rate of over $16.00, more than twice the minimum wage. (SMF ¶ 20, Witczak Decl. ¶¶ 17-19 and Ex. B)

The plaintiff has not and cannot show that he was paid less than minimum wage for the hours he was required to work by the defendant because the plaintiff never earned less than minimum wage. His lowest pay from the defendant was nearly twice minimum wage (i.e. $16.00 per hour).

In *Caci v. Wiz of Lake Grove, Inc., 267 F. Supp. 2d 297 (E.D.N.Y. 2003)*, the district court granted summary

judgment in the employers' favor on the plaintiff's minimum wage and retaliation claims. The plaintiff was a sales associate who claimed that his employer did not pay him minimum wage for all of his hours. Caci was paid by commissions and an hourly draw. Caci complained that he was not being paid for the hours he worked cleaning and maintaining his work area after the store closed because he was unable to earn any commission during that time. *Id. at 298*. Caci refused to work after the store closed and was terminated. *Id. at 298-99*. The district court determined that "[d]espite Caci's contention [*18] that he was not paid for the hours he worked after the store closed because he was unable to make any sales and, therefore, to earn any commissions during those hours, the undisputed facts demonstrate that Caci was paid at least the required minimum wage for every hour worked, that is, Caci's weekly pay divided by the total hours he worked - including hours he worked after the store closed - yielded an hourly rate exceeding the required minimum wage...." *Id. at 300* (citations omitted).

The plaintiff seems to contend that the defendant had no right to ever increase or change the duties or hours covered by his commissions. Plaintiff cites no case law for this proposition; does not address any of the relevant DOL regulations; and does not discuss or distinguish the Caci case. "The Act does not preclude an employer from lowering an employee's hourly rate, provided the rate paid is at least the minimum wage, or from reducing the number of hours the employee is scheduled to work." See DOL Wage and Hour Division, *Fact Sheet #70: Frequently Asked Questions Regarding Furloughs and Other Reductions in Pay and Hours Worked Issues* (Nov. 2009).

Like the plaintiff in *Caci*, the plaintiff in the present [*19] case was paid at least the required minimum wage for every hour worked, including those in-store under the Program. "As a general rule, an employee cannot succeed on a claim under the FLSA if his average wage for a period in which he works no overtime exceeds minimum wage." *Bolick v. Brevard County Sheriff's Dept.*, 937 F. Supp. 1560, 1568 (M.D. Fla. 1996)(citations omitted). "Letter opinions issued by the U.S. Department of Labor's Wage and Hour Division support this general rule." *Id. at 1568-69*. The plaintiff has failed to show that he was not paid the required minimum wage for all hours worked. Moreover, it is undisputed that the plaintiff never performed the work under the Program for which he now claims he was entitled to additional compensation. The

defendant is entitled to judgment as a matter of law on Count I (minimum wage) of the plaintiff's Complaint.

**B. Retaliation**

With respect to the retaliation claim, the plaintiff alleges that "[o]n April 3, 2010, shortly after complaining to his supervisor about the Defendant's failure to pay minimum wage for each hour worked, Plaintiff was terminated from employment." Complaint ¶ 18 (DE# 1, 7/13/10). The defendant argues that it is entitled [*20] to summary final judgment on the retaliation claim on three separate grounds: the plaintiff's inability to establish two of the elements of his *prima facie* case (protected activity and adverse action) and his ultimate burden of proving pretext. See Defendant's Motion for Summary Judgment at 2 (DE# 39, 5/4/11); Memorandum of Law in Support of Defendant's Motion for Summary Judgment (DE# 39-2, 5/4/11); and Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment (DE# 44, 6/7/11) .

*Section 215(a)(3) of the FLSA* prohibits employers from

> discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). Where the plaintiff does not present any direct evidence of retaliatory discharge, circumstantial evidence may be evaluated under the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); See *Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. Appx. 820, 822 (11th Cir. 2008).

Under [*21] this framework, the plaintiff must first establish a prima facie case of retaliation. *McDonnell Douglas Corp.*, 411 U.S. at 802. "A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: '(1) [he] engaged in activity protected under [the] act; (2) [he] subsequently suffered adverse action by the employer; and (3) a causal connection

existed between the employee's activity and the adverse action.'" *Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342-43 (11th Cir. 2000)* (citing *Richmond v. ONEOK, Inc., 120 F.3d 205, 208-09 (10th Cir.1997))*. The employer must then articulate a legitimate non-retaliatory reason for the adverse employment action. *Raspanti, 266 Fed. Appx. at 822.* "[T]he defendant's burden of rebuttal is exceedingly light." *Perryman v. Johnson Products Co., 698 F.2d 1138, 1142 (11th Cir. 1983).* "If the employer asserts a legitimate reason for the adverse action, the plaintiff may attempt to show pretext." *Wolf, 200 F.3d at 1343.* "In demonstrating causation, the plaintiff must prove that the adverse action would not have been taken 'but for' the assertion of FLSA rights." Id. (citation omitted).

**a. Protected Activity**

1. Notice

The defendant argues [*22] that it is entitled to summary final judgment on the plaintiff's retaliation claim because the plaintiff has not shown that he engaged in a protected activity. See Def.'s Motion (DE# 39, 5/4/11). Protected activity within the meaning of the FLSA includes filing a complaint alleging FLSA violations, instituting a FLSA proceeding, or providing (or about to provide) testimony in a FLSA proceeding. See *29 U.S.C. § 215(a)(3)*. The defendant argues that the plaintiff's complaints do not rise to the level of protected activity and that he did not have an objectively reasonable, good faith belief that BrandsMart was violating the law. The Court agrees.

The Eleventh Circuit has held that informal complaints to a private employer can constitute an assertion of rights protected under the anti-retaliation provision of the FLSA. *E.E.O.C. v. White and Son Enterprises, 881 F.2d 1006, 1011 (11th Cir. 1989)*(concluding that "the unofficial complaints expressed by the women to their employer about unequal pay constitute an assertion of rights protected under the statute"); contra, *Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1337, 179 L. Ed. 2d 379 (2011)* (Scalia, J., dissenting) ("The plain meaning [*23] of the critical phrase ['filed any complaint'] and the context in which [it] appears make clear that the retaliation provision contemplates an official grievance filed with a court or an agency, not oral complaints - or even formal, written complaints - from an employee to an employer.").

In *Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1335, 179 L. Ed. 2d 379 (2011)*, the Supreme Court concluded, consistent with White and Son, that the term "filed any complaint" did not require a writing, and could include oral complaints. The Supreme Court did not address the issue of whether the anti-retaliation provision only applies to complaints made to the government that is, not to a private employer. The Supreme Court was sensitive to the argument that an employer must have fair notice that the employee is making a complaint about a violation of the FLSA and stated:

> the phrase "filed any complaint" contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns.

*Id. at 1334.* In Kasten, the Supreme Court explained,

> [t]o fall within [*24] the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both the content and context, as an assertion of rights protected by the statute and a call for their protection.

Id. In Kasten, the Supreme Court held that "[t]his standard can be met, however, by oral complaints, as well as by written ones." Id. The Supreme Court did not entertain Saint-Gobain's alternative argument that the anti-retaliation provision applies only to complaints filed with the government, not the employer. *Id. at 1336*; contra, *Kasten, 131 S. Ct. at 1337* (Scalia, J., dissenting) (criticizing the majority's refusal to entertain the issue and determining that "'complaint' in the FLSA refers to an official filing with a governmental body"). In Kasten, the Supreme Court found that "the Seventh Circuit erred in determining that oral complaints cannot fall with the scope of the phrase 'filed any complaint' in the Act's antiretaliation provision" and left it to the "lower courts to decide whether Kasten will be able to satisfy the Act's notice requirement." *Kasten, 131 S. Ct. at 1336.*

The defendant argues that "[g]iven the context, [*25] Perez' complaints do not meet the degree of specificity required by *[Kasten].* An employee who is

making twice minimum wage who demands more money for a perceived change in his duties does not put a reasonable employer on notice that he is asserting rights or a violation of the FLSA." Def.'s Memo. (DE# 39-2 at 17-18; 5/4/11). The defendant concedes that "Perez' complaints did have some degree of formality when he went to Human Resources," but argues that "his complaints were not 'sufficiently clear and detailed' for BrandsMart to understand, in light of both the content and context, that he was asserting rights under the FLSA." Id. at 17.

The defendant acknowledges that the plaintiff's repeated remarks that he would not "work for free" might seem, in the abstract, like a complaint that he was entitled to minimum wage if he was going to be asked to start doing tasks in the store. However, in context, the plaintiff was paid commissions that covered tasks beyond simple installation of equipment, including non-productive time such as a waiting time. The plaintiff's managers knew that BrandsMart guaranteed the plaintiff minimum wage for all compensable hours worked. Additionally, they knew [*26] that the plaintiff was making more than minimum wage in commissions. The plaintiff did not mention the FLSA and did not specifically ask to be paid minimum wage. The plaintiff's managers understood that the plaintiff was complaining about his compensation, wanted more money for waiting in the stores (e.g. once asking for $20/hour), and that the plaintiff did not agree that his commissions should cover those additional duties. Demands for more compensation are not protected activity. *Alvarado v. I.G.W.T. Delivery Systems, Inc.*, 410 F. Supp. 2d 1272 (S.D. Fla. 2006).

In Alvarado, this Court granted summary judgment for the defendants on the plaintiffs' retaliation claim because the plaintiffs could not show they were engaged in a protected activity. In that case, the plaintiffs' retaliation claim was based, in part, on letters signed by the plaintiffs in February 2005 "requesting, among other things, an increase in salary, reorganization of delivery routes, the cessation of discriminatory comments on the job, and increased courtesy and respect in company memorandums." *Id. at 1278.* This Court concluded that the February 2005 letters "fail[ed] to meet the elements required for a prima facie [*27] case [of retaliation]" because "[t]he letters themselves d[id] not appear to clearly assert rights under the [FLSA] in that they make no specific mention of overtime pay or invoke the FLSA." *Id. at 1279.*

Nowhere in the plaintiff's statements to management does the plaintiff assert his rights under the FLSA or mention minimum wage. See *Alvarado, 410 F. Supp. 2d at 1279; Etienne v. Muvico Theaters, Inc.*, No. 01-6265-CIV, 2003 U.S. Dist. LEXIS 14036, 2003 WL 21184268, * 18 (S.D. Fla. Mar. 11, 2003) (plaintiff failed to make prima facie retaliation claim under FLSA where plaintiff did not present evidence "that he threatened to report labor-law violations, or file a complaint about business practices at the theater."). Thus, the plaintiff has failed to establish that he was engaged in a protected activity and the defendant is entitled to summary final judgment on this claim.

2. Objectively Reasonable, Good Faith Belief

Even if the plaintiff satisfied the notice requirement under *Kasten*, the commissions paid by the defendant exceeded the minimum wage for each hour the plaintiff worked, including in-store hours. Complaints of legal activity can still be protected if the employee has an objectively reasonable, good faith [*28] belief that the employer's conduct is unlawful. This standard has two requirements: 1) the employee must show that he subjectively, that is in good faith, believed that his employer was violating the law. *Little v. United Techs. Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (decided under Title VII anti-retaliation provision). The employee's complaint does not constitute protected activity unless the belief is both objectively reasonable and in good faith. Id.; *Burnette v. Northside Hospital*, 342 F. Supp. 2d 1128, 1134 (N.D. Ga. 2004)(citing Little, id., and *Standard v. ABEL Servs., Inc.*, 161 F.3d 1318, 1328-29 (11th Cir. 1998)). The record is devoid of evidence that the plaintiff claimed that he believed in good faith that he was not getting paid for waiting time, and that he was entitled to at least minimum wage for going into the store or performing any duties in the store.

Even if he did meet the subjective good faith belief that he was entitled by law to more compensation, the plaintiff cannot meet the second part of the standard, that he had an "objectively reasonable belief that his employer was engaged in unlawful practices." *Padilla v. The North Broward Hosp. Dist.*, 270 Fed. Appx. 966 (11th Cir. 2008) [*29] (Title VII). The plaintiff's belief must have been "objectively reasonable in light of the facts and the record presented." *Little, 103 F.3d at 960.* "[I]t is presumed that the employee has substantive knowledge of the law" when applying the objective test. *Padilla, 270*

*Fed. Appx. at 966*; accord *Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1388 n.2 (11th Cir. 1998)* ("If plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge.").

The defendant relies on *Burnette v. Northside Hospital, 342 F. Supp. 2d 1128 (N.D. Ga. 2004)*. In Burnette, the plaintiff complained about a change in his employer's on-call program that resulted in his loss of on-call pay. *Burnette, 342 F. Supp. 2d at 1134-35*. Burnette was told that his only obligation once he was home was to answer the phone if his supervisor called; he could then choose whether to come in or not. Id. The applicable law is that on-call time is only compensable when the employee's on-call duties severely restrict the employee's use of free time. *Id. at 1135*. (citation omitted). In Burnette, the district court held that the employee's [*30] subjective belief was not objectively reasonable despite his honest belief that the employer was acting unlawfully, and that his complaint was not protected activity. *Id. at 1135-36*.

Likewise, the plaintiff in the present case cannot satisfy the objectively reasonable requirement. Even if the plaintiff did not know that BrandsMart guaranteed him minimum wage for all hours worked, it is an undisputed fact. The applicable law allows commission payments to cover any hours spent for the benefit of the employer, regardless of how those hours are spent. The FLSA does not prohibit an employer from changing or increasing job duties, hours or assignments, as long as the employee receives at least minimum wage for all compensable hours. The plaintiff's complaints were not objectively reasonable and thus, cannot constitute protected activity.

**b. Pretext**

Even assuming the plaintiff can establish a prima facie case for retaliation, the defendant would still be entitled to summary final judgment as a matter of law because the defendant has shown that the plaintiff was terminated for a legitimate reason and the plaintiff has failed to show that the defendant's reason is pretextual. See *Alvarado, 410 F. Supp. 2d at 1279* [*31] (on summary judgment motion noting that even though a causal connection appeared to exist, "Defendants ha[d] provided a valid reason for their termination and the Plaintiffs ha[d] not met the burden of persuasion that this proffered reason [wa]s pretextual in nature."). The defendant has shown that it terminated the plaintiff for a legitimate reason - job abandonment based on the plaintiff's refusal to perform assigned tasks under the Program. See Def.'s Memo. (DE# 39-2 at 16, 5/4/11)(citing Statement of Material Facts ¶¶ 31-35)(DE# 39-1, 5/4/11).

Where, as here, the defendant proffers some legitimate, non-discriminatory basis for terminating the plaintiff, the plaintiff must show pretext. To show pretext, the plaintiff must reveal "'such weaknesses, implausibilities, inconsistencies, incoherences or contradictions' in the employer's reasons for its actions that a reasonable fact finder could find them unworthy of credence.'" *Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)* (quoting *Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1072 (3d Cir. 1996)*(other citations omitted)).

In his opposition, the plaintiff "claims that he was discharged after meeting with [*32] Cosmo Adamo, Gary Carlisle and one other manager on April 9, 2009 [sic]." Additionally, the plaintiff maintains that the words used by Adamo left no doubt as to what happened: "Indeed, Carlisle's Declaration leaves little to the imagination when [Carlisle] says, 'At the end of the meeting, Adamo told Perez that if he was unwilling to go into the store that he could leave his badge and go.'" Pl.'s Opposition (DE# 43 at 12 n. 2, 5/31/11) (quoting Carlisle Decl. ¶ 27).

Although the plaintiff acknowledges the burden-shifting required by *McDonnell Douglas*, the plaintiff fails to address pretext and submits no evidence to rebut the defendant's legitimate ground for termination. The plaintiff's reliance on Mr. Carlisle's testimony fails to rebut the defendant's legitimate ground, i.e. job abandonment based on refusal to perform assigned work.

The plaintiff challenges BrandsMart's decision to implement the Program without first obtaining "advice of counsel." Id. at 8. Without citing any legal authority, the plaintiff argues that a jury can find the existence of a good faith belief on the following grounds: 1) the Human Resources department needed to research his objections; 2) the employer unilaterally [*33] imposed the additional duties after the plaintiff commenced employment; and 3) the plaintiff repeatedly complained and noted "free labor" on his time sheet and met with HR and Gary Carlisle. Id. at 9-11.

The plaintiff contends that a jury question exists because the defendant has asserted inconsistent positions. The plaintiff argues that "[t]he Defendant cannot claim on the one hand that it never fired the Plaintiff and assert on the other that it was justified in firing him." Id. at 11. The plaintiff concedes that if he quit, he loses his retaliation claim. Pl.'s Opposition at 11 (DE# 43, 5/31/11) The defendant is within its rights to assert alternative defenses.

Although there is an issue as to whether the plaintiff quit or was fired, it does not preclude summary judgment. The defendant denies that it fired the plaintiff at the April 9, 2010 meeting, but admits that it terminated the plaintiff several weeks later for job abandonment. The defendant has proffered a legitimate reason for his termination that the plaintiff has failed to rebut. "[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, [*34] so long as the reason is one that might motivate a reasonable employer." *Clark v. Alabama, 141 Fed. Appx. 777, 788 (11th Cir. 2005)*. "Indeed, '[f]ederal courts do not sit to second-guess the business judgment of employers.'" Id. (citing *Combs, 106 F.3d at 1543*).

In the instant case, the defendant has proffered a valid reason for terminating the plaintiff, job abandonment due to refusing to perform assigned work, and the plaintiff has not shown pretext. The facts surrounding the plaintiff's departure on April 9, 2010 following the meeting with his managers contain discrepancies between the parties and within the plaintiff's own testimony (deposition and declaration). However, taking the facts in the light most favorable to the non-movant plaintiff, the evidence supports the defendant's position that the plaintiff's employment was dependent on his willingness to go into the store. Whether the plaintiff quit or whether BrandsMart fired him, the plaintiff has failed to put forth any evidence of pretext. Accordingly, the defendant is entitled to summary final judgment on the retaliation claim.

## CONCLUSION

Based on the foregoing, the Court finds that the defendant is entitled to summary final [*35] judgment on the plaintiffs minimum wage claim and his retaliation claim. The plaintiff was properly paid in excess of minimum wage for all hours worked. Addtionally, the plaintiff has not shown as a matter of law that he was engaged in a protected activity or that there was a causal connection between his complaints and his alleged termination. Even if the plaintiff can show a prima facie case for retaliation, the defendant has provided a valid reason for the plaintiffs termination. Accordingly, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Summary Judgment (DE# 39, 5/4/11) is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida this **28th** day of July, 2011.

/s/ John J. O'Sullivan

JOHN J. O'SULLIVAN

UNITED STATES MAGISTRATE JUDGE

Page 1



KIM STEINER-OUT and SERENA VELAQUEZ, on their own behalf and on behalf
of others similarly situated, Plaintiffs, v. LONE PALM GOLF CLUB, LLC,
Defendant.

Case No. 8:10-cv-2248-T-24 TBM

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
FLORIDA, TAMPA DIVISION

*2010 U.S. Dist. LEXIS 115415*

October 28, 2010, Decided
October 28, 2010, Filed

**SUBSEQUENT HISTORY:** Magistrate's
recommendation at *Steiner-Out v. Lone Palm Golf Club,
LLC, 2011 U.S. Dist. LEXIS 74776 (M.D. Fla., June 24,
2011)*

**COUNSEL:** [*1] For Kim Steiner-Out, on his own
behalf and others similarly situated, Serena Velaquez, on
her own behalf and others similarly situated, Plaintiffs:
William John Gadd, LEAD ATTORNEY, Mazaheri
Gadd, PA, Clearwater, FL.

For Lone Palm Golf Club, LLC, Defendant: Glenn M.
Rissman, LEAD ATTORNEY, Stearns, Weaver, Miller,
Weissler, Alhadeff & Sitterson, PA, Ft Lauderdale, FL.

**JUDGES:** SUSAN C. BUCKLEW, United States
District Judge.

**OPINION BY:** SUSAN C. BUCKLEW

**OPINION**

**ORDER**

This cause comes before the Court on Defendant's
Motion to Dismiss. (Doc. No. 4). Plaintiffs oppose the
motion. (Doc. No. 6). As explained below, the motion is

denied.

**I. Standard of Review**

In deciding a motion to dismiss, the district court is
required to view the complaint in the light most favorable
to the plaintiff. See *Murphy v. Federal Deposit Ins.
Corp., 208 F.3d 959, 962 (11th Cir. 2000)*(citing *Kirby v.
Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999))*. The
Federal Rules of Civil Procedure do not require a
claimant to set out in detail the facts upon which he bases
his claim. Instead, *Rule 8(a)(2)* requires a short and plain
statement of the claim showing that the pleader is entitled
to relief in order to give the defendant fair notice of what
the claim [*2] is and the grounds upon which it rests. See
*Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct.
1955, 1964, 167 L. Ed. 2d 929 (2007)*(citation omitted).
As such, a plaintiff is required to allege "more than labels
and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." *Id. at 1965*
(citation omitted). While the Court must assume that all
of the allegations in the complaint are true, dismissal is
appropriate if the allegations do not "raise [the plaintiff's]
right to relief above the speculative level." Id. (citation
omitted). The standard on a 12(b)(6) motion is not
whether the plaintiff will ultimately prevail in his or her
theories, but whether the allegations are sufficient to
allow the plaintiff to conduct discovery in an attempt to

prove the allegations. See *Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).*

## II. Background

Plaintiffs allege the following in their amended complaint (Doc. No. 7): Plaintiffs were employed by Defendant as part of its wait staff. Plaintiffs allege that Defendant violated the Fair Labor Standards Act ("FLSA") by failing to properly compensate them and by retaliating against Plaintiff Steiner-Out. Specifically, [*3] in Count I, Plaintiffs contend that Defendant forced them to participate in tip pooling, forced them to share their tips with non-wait staff employees and managers, and failed to compensate them for all of the hours that they worked. Additionally, in Count II, Plaintiff Steiner-Out contends that Defendant retaliated against her by calling her names and terminating her after she complained about Defendant's failure to pay wages in accordance with the FLSA.

## III. Motion to Dismiss

In the instant motion, Defendant moves to dismiss both counts of Plaintiffs' amended complaint for failing to state a claim. As explained below, the Court finds that Plaintiffs' claims are sufficiently pled.

## A. Failure to Properly Compensate Plaintiffs

In Count I of the amended complaint, Plaintiffs allege that Defendant violated the FLSA by forcing them to participate in tip pooling, forcing them to share their tips with non-wait staff employees and managers, and failing to compensate them for all of the hours that they worked. Defendant argues that this claim should be dismissed because it is not a sufficiently pled minimum wage claim or overtime claim. Specifically, Defendant argues that (1) it is not clear whether [*4] Plaintiffs are alleging a failure to pay overtime or a failure to pay the minimum wage; (2) if Plaintiffs are seeking overtime pay, the claim fails, since they have not alleged that they have worked in excess of forty hours in at least one workweek; and (3) if Plaintiffs are asserting a minimum wage claim, the claim fails, because even accepting that they were not paid for every hour that they worked, they did not allege that their actual wages for any workweek divided by the number of hours that they worked in such week equals an hourly rate that is less than the statutory minimum hourly rate [1].

1   Stated differently, Plaintiffs have not alleged that the statutory minimum hourly rate multiplied by the number of hours that they worked in a given week equaled an amount greater than their actual wages for such workweek.

It is true that the amended complaint is not a model of clarity and does not explicitly state whether Plaintiffs are asserting a minimum wage claim, an overtime claim, or both. However, a reasonable reading of the amended complaint reveals that they are claiming that Defendant did not pay them for all of the hours that they worked, which is in essence a claim that they [*5] were not paid a minimum wage for some of the hours that they worked. Furthermore, to the extent that they worked more than forty hours in any workweek in which they were not paid for all of the hours that they worked, their claim can reasonably be viewed as an overtime claim. While Plaintiffs will have to show that they worked more than forty hours in a workweek in order to succeed on an overtime claim, the Court finds that based on the allegations in the amended complaint in their entirety, Plaintiffs' failure to specifically allege that they worked more than forty hours in any workweek is not fatal to their claim. Likewise, while Plaintiffs will have to show that their actual wages for any workweek divided by the number of hours that they worked in such week equals an hourly rate that is less than the statutory minimum hourly rate in order to succeed on a minimum wage claim, the Court finds that based on the allegations in the amended complaint in their entirety, Plaintiffs' failure to specifically make such an allegation is not fatal to their claim.

However, after reviewing some of the arguments in Plaintiffs' response brief, the Court has some concerns regarding Plaintiffs' theory [*6] of a minimum wage violation. Specifically, Plaintiffs contend that if they can show that there were any hours that they worked for which they were not paid, then such a showing is all that is required to establish an FLSA minimum wage violation. (Doc. No. 6, p. 3-4). While Plaintiffs' contention is correct in situations in which an employee is paid an hourly rate and that rate is equal to the statutory minimum wage, their contention is not always accurate when an employee is a paid an hourly rate that exceeds the statutory minimum wage. [2] This is because "it is the workweek as a whole rather than each individual hour within a workweek that is the relevant unit for determining compliance with the minimum wage

Case 2:14-cv-05419-DRH-GXB   Document 21-1   Filed 02/03/15   Page 51 of 52 PageID #: 321

Page 3
2010 U.S. Dist. LEXIS 115415, *6

requirement." *Walters v. American Coach Lines of Miami, Inc., 569 F. Supp.2d 1270, 1300 (S.D. Fla. 2008)*(citations omitted); see also *Johnson v. RGIS Inventory Specialists, 554 F. Supp.2d 693, 710 (E.D. Tx. 2007)*(stating that "the workweek is the proper standard for determining compliance with the minimum wage requirements"); *Munrow v. PartsBase, Inc., 2009 U.S. Dist. LEXIS 15801, 2009 WL 413721, at *2 (S.D. Fla. Feb. 18, 2009)*(stating that "[t]he FLSA generally requires the payment of at least the prescribed [*7] minimum wage each workweek"). The rationale for this has been explained by the court in Dove v. Coupe:

> The purpose of the minimum wage provisions is to protect certain groups of the population from sub-standard wages . . . due to . . . unequal bargaining power. That purpose is met by the workweek standard[, which requires that] . . . the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement.

*759 F.2d 167, 171, 245 U.S. App. D.C. 147 (D.C. Cir. 1985)*(internal quotation marks and citations omitted). The Dove court rejected the argument that an employer must show specific hour-by-hour compliance, and instead, the court recognized that judicial decisions established the workweek as the proper unit of time for measuring compliance. See id.

> 2   Plaintiffs have not alleged their hourly rate of pay.

Additionally, the Court notes that Plaintiffs' allegations in Count I also relate to Defendant's handling of their tips, and those allegations affect the determination of whether Plaintiffs were paid the required minimum wage. As a result, the [*8] FLSA's definitions of "tipped employee" and "wages" set forth in *29 U.S.C. § 203* are implicated.

Pursuant to *§ 203(t)*, the FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." Additionally, the FLSA's definition

of "wages" set forth in *§ 203(m)* "recognizes that under certain circumstances, employers of 'tipped employees' may include part of such employees' tips as wage payments." *Cumbie v. Woody Woo, Inc., 596 F.3d 577, 580 (9th Cir. 2010)*. Specifically, pursuant to *§ 203(m)*, the current minimum cash wage that an employer must directly pay a tipped employee is reduced to $2.13 when the employer qualifies for a "tip credit." A "tip credit" is an amount equal to the difference between the statutory minimum rate and the $2.13 reduced minimum cash wage for tipped employees. [3] Pursuant to *§ 203(m)*, in order for the employer to qualify for the tip credit, two requirements must be met: (1) the employer must inform the tipped employee of the provisions of *§ 203(m)*, and (2) all tips received by such employee must be retained by the employee (unless the tipped employee participates in a tip pool [*9] with other employees who customarily and regularly receive tips). Thus, based on *§ 203(m)*:

> [A]n employer must pay a tipped employee a cash wage of at least $2.13, but if the cash wage is less than the federal minimum wage, the employer can make up the difference with the employee's tips . . . . [I]f the cash wage plus tips are not enough to meet the minimum wage, the employer must "top up" the cash wage.

*Cumbie, 596 F.3d at 580*. Therefore, Plaintiffs' allegations that Defendant forced them to participate in tip pooling, in which they had to share their tips with non-wait staff employees and managers, goes to the issue of whether Defendant was entitled to take a tip credit when determining the amount of wages that it was required to directly pay Plaintiffs.

> 3   The amount of the tip credit cannot exceed the value of the tips actually received by the employee. *29 U.S.C. § 203(m)*.

Accordingly, after considering all of the allegations in Plaintiffs' complaint, the Court finds that Plaintiffs have sufficiently pled a violation of the FLSA's minimum wage and/or overtime provisions in Count I. See *Souder v. Premier Automotive on Atlantic, LLC, 2009 U.S. Dist. LEXIS 25591, 2009 WL 691916, at *4 (M.D. Fla. 2009)*. Therefore, Defendant's [*10] motion to dismiss Count I is denied.

**B. Retaliation**

In Count II, Plaintiff Steiner-Out contends that Defendant retaliated against her by calling her names and terminating her after she complained about Defendant's failure to pay wages in accordance with the FLSA. Defendant contends that this claim must be dismissed, because Plaintiff Steiner-Out did not complain about an *actual* FLSA violation. Specifically, Defendant contends that since the "tips" at issue in this case were actually mandatory service charges (and thus do not meet the definition of "tips" under the FLSA), Plaintiff Steiner-Out's complaints regarding Defendant's allegedly improper handling of the tips was not a complaint about an actual FLSA violation. Defendant's argument, however, goes to the issue of whether Plaintiffs will be able to show that the tips at issue met the definition of tips under the FLSA, which is not the proper focus of a motion to dismiss. As such, if Defendant wishes to raise this issue prior to trial, the proper vehicle for such an argument is a motion for summary judgment. Accordingly, Defendant's motion to dismiss Count II is denied.

### IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendant's [*11] Motion to Dismiss (Doc. No. 4) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 28th day of October, 2010.

/s/ Susan C. Bucklew

SUSAN C. BUCKLEW

United States District Judge