UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MICHAEL WALKER and NATHANIEL WALKER,
on behalf of themselves and all other similarly situated,

                  Plaintiffs,                          **MEMORANDUM AND ORDER**
                                                                        14 CV 5419 (DRH) (GRB)

        - against -

THE INTERFAITH NUTRITION NETWORK, INC.
and CHRISTIAN AGUILERA, in his individual and
professional capacities,

                  Defendants.
-------------------------------------------------------------------X
**APPEARANCES:**

**BORRELLI & ASSOCIATES, P.L.L.C.**
Attorneys for Plaintiffs
1010 Northern Boulevard, Suite 328
Great Neck, NY 11021
By:    Todd Dickerson, Esq.
         Alexander T. Coleman, Esq.
         Michael J. Borrelli, Esq.

**JACKSON LEWIS P.C.**
Attorneys for Defendants
58 South Service Road, Suite 250
Melville, NY 11747
By:    John J. Porta, Esq.
         Noel P. Tripp, Esq.

**HURLEY, Senior District Judge:**

        Plaintiffs Michael Walker ("Michael") and Nathaniel Walker ("Nathaniel") (collectively,

"Plaintiffs")[1] commenced this action against Defendants The Interfaith Nutrition Network, Inc.

---

[1] Although Plaintiffs bring this action on behalf of a proposed collective class, to date, no motion for class certification has been made.

1

("INN") and Christian Aguilera ("Aguilera")[2] (collectively, "Defendants") asserting claims of unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a) and 207(a), and related New York labor laws.

Presently before the Court is Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  For the foregoing reasons, Defendants' motion is granted and the Plaintiffs' claims are dismissed in their entirety.

## BACKGROUND

INN is a not-for-profit corporation, organized pursuant to 26 U.S.C. § 501(c)(3), that operates soup kitchens, emergency shelters, and housing programs.  (Amended Complaint ("AC") ¶¶ 9, 19.)  INN's long-term housing program consists of at least twenty-three units, all located in New York.  (*Id*. ¶ 20.)  Defendants charged their tenants rent to stay in these housing units and Plaintiffs allege that they "compet[ed] with other commercial landowners for these tenants."  (*Id*. ¶ 21.)  Plaintiffs also alleged that Defendants "routinely made their land and other real estate available for sale to the general public and sold this land and other real estate to the highest bidder."  (*Id*. ¶ 21.)

Aguilera is the director of INN's Facilities Department, which is mainly responsible for performing general maintenance work for INN's housing program.  (*Id*. ¶¶ 23, 24.)  In December 2007, Defendants hired Michael to perform general maintenance duties for their Facilities Department, where he worked under the supervision of Aguilera until INN transferred Michael to its Development Department in late 2013.  (*Id*. ¶¶ 29, 35, 36.)  In July 2007, Defendants hired Nathaniel to perform general maintenance duties for their Facilities Department, where he worked under the supervision of Aguilera at least until Plaintiffs filed this action.  (*Id*. ¶¶ 38, 44.)

---

[2] Plaintiffs bring this action against Aguilera in his individual and professional capacities.

During their normal work hours of 8 a.m. to 5 p.m., Plaintiffs' duties mainly consisted of performing general maintenance work for Defendants' housing programs, including responding to tenants' housing-unit emergencies and attempting to fix the problems. (*Id.* ¶¶ 33, 42.) Outside of their normal work hours, Plaintiffs were often required to respond to emergency pages from Defendants' tenants and attempt to fix the problems with the housing units. (*Id.* ¶¶ 34, 43.) Plaintiffs claim that under their normal schedule, they worked at least forty hours per week for every week as Defendants' employees. (*Id.* ¶¶ 32, 41.) Plaintiffs also claim, however, that when answering emergency pages, they received no compensation "for their travel time to and from Defendants' housing units." (*Id.* ¶ 54.) Plaintiffs further allege that "Defendants also provided no compensation for the time Plaintiffs spent while they were 'on call,' while holding the beeper." (*Id.* ¶ 54.)

## DISCUSSION

### I. Rule 12(b)(6) Standard

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Over the past decade, the Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561. Instead, to survive a

3

motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent

with" a defendant's liability, it "stop short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id*. at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-that the pleader is entitled to relief." *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## II. FLSA Coverage

The FLSA protects employees by requiring that employers pay them minimum wage and an overtime wage at a rate not less than one and one-half times the regular rate for a workweek longer than forty hours. 29 U.S.C. §§ 206(a), 207(a)(1). The FLSA, however, protects only those employees who are (1) employed by an enterprise engaged in commerce or in the production of goods for commerce or (2) themselves engaged in commerce or in the production of goods for commerce. *Id*; *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985); *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009). "The two categories are commonly referred to as 'enterprise' and 'individual' coverage, respectively." *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 84 (E.D.N.Y. 2010) Here, Plaintiffs fail to sufficiently plead that they are protected under either category.

### 1. Enterprise Coverage

As discussed above, the FLSA covers those employed by an enterprise engaged in commerce or in the production of goods for commerce. The FLSA defines "enterprise" as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose. . . ." 29 U.S.C. § 203(r)(1). "A organization that performs religious, educational, or charitable activities does not perform these activities for a 'business purpose,' and thus does not constitute an enterprise, unless the activities compete in the

5

marketplace with ordinary commercial enterprises." *Locke*, 690 F. Supp. 2d at 86-87 (citing *Alamo Found.*, 471 U.S. at 296-97). Moreover, a non-profit organization is not an enterprise merely because it receives income. *See id.* ("[C]harging a fee for services does not necessarily render a non[-]profit . . . a 'business enterprise.' " (quoting *Genarie v. PRD Mgmt.*, 2006 WL 436733, at *8 (D.N.J. Feb. 17, 2006))).

Here, Defendants argue that they do not constitute an enterprise.[3] Although Plaintiffs acknowledge that INN is a 501(c)(3) non-profit corporation, meaning that it is "organized and operated exclusively" for charitable purposes, 26 U.S.C. § 501(c)(3), they allege that Defendants are an enterprise pursuant to the FLSA because "they routinely competed in the marketplace with other commercial enterprises." (AC ¶ 12.) Attempting to support this conclusion, Plaintiffs allege that Defendants "charged their tenants rent to stay in [Defendants' housing units]"; "routinely made their land and other real estate available for sale to the general public and sold this land and other real estate to the highest bidder"; and "derived a substantial portion of their yearly net revenue from these, and other, commercial activities." (AC ¶ 12.) These allegations, however, fail to support a reasonable inference that Defendants competed in the marketplace with ordinary commercial enterprises because the allegations are unsupported by facts indicating the competitive nature of Defendants' alleged commercial activities. Particularly, Plaintiffs have not presented any facts suggesting that in renting and selling its properties INN competed in the marketplace with "ordinary commercial realtors," for example, through advertisement or solicitation. *Locke*, 690 F. Supp. 2d at 88 (holding that because the defendant did not advertise or market its rental spaces, "[n]o reasonable factual inference [could] be drawn in favor of the

---

[3] Defendants contend that since "Aguilera is sued based on his role as a managerial employee of INN," their analysis applies equally to both INN and Aguilera. (Defs.' Mem. in Supp. at 6.) Plaintiffs do not dispute this assertion.

6

claim that [the defendant's] activity compete[d] with ordinary rental facilities to serve the general public . . . ."); *cf. Boekemeier v. Fourth Universalist Soc'y in the City of New York*, 86 F. Supp. 2d 280, 285-86 (S.D.N.Y. 2000) (finding that church's participation in an extensive advertising campaign to solicit interstate renters of its special event space was "sufficient to invoke enterprise coverage"). Moreover, Plaintiffs' conclusory allegation that Defendants "routinely competed in the marketplace with other commercial enterprises" provides no indication as to the actual frequency of Defendants' activities. Accordingly, the allegations "do not support a reasonable inference that the defendant provides services to the general public for which it competes with other commercial enterprises, such that it could be deemed to have 'enter[ed] the economic arena and traffick[ed] in the marketplace' and thus 'subjected itself to the standards Congress has prescribed for the benefit of employees.' " *Malloy v. Ass'n of State and Territorial Solid Waste Mgmt. Officials*, 955 F. Supp. 2d 50, 56 (D.D.C. 2013) (quoting *Alamo*, 471 U.S. at 294). Therefore, the Amended Complaint does not plausibly plead that Defendants are an enterprise under the FLSA.

**2. Individual Coverage**

The FLSA's individual coverage theory applies to employees who are "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). Here, there is no dispute that Plaintiffs did not engage in the production of goods for commerce, but Plaintiffs claim that they have sufficiently alleged that they engaged in commerce. An employee engages in commerce when " 'a substantial part' of the employee's work [is] related to interstate commerce." *Divins v. Hazeltine Electronics Corp.*, 163 F.2d 100, 103 (2d. Cir. 1947) (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 572 (1943)); *Boekemeier*, 86 F. Supp. 2d at 287 (stating that the test for individual coverage "is not whether the employee's activities affect

7

or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." (quoting *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943))).

Plaintiffs' Amended Complaint fails to adequately plead that Plaintiffs were engaged in commerce. First, Plaintiffs' allegation that they "routinely used and handled goods, equipment, and other materials, such as motor vehicles, hammers, screwdrivers, ice melt, cement, snow blowers, etc., much of which originated or was manufactured in states other than New York" (AC ¶ 13) does not support their claim of individual coverage. In order to be "engaged in commerce," plaintiff must "work in the channels of interstate or foreign commerce, or in activities so closely related to this commerce, as to be considered a part of it." *Li v. Zhao*, 35 F. Supp. 3d 300, 308 (E.D.N.Y. 2014) (internal quotation marks and citations omitted). "Activities that simply affect or indirectly relate to interstate commerce are insufficient." *Id*. (internal quotation marks and citations omitted). Again, Plaintiffs' use of the term "routinely" is vague and provides no specific information about the actual frequency of Plaintiffs' alleged use of items that were manufactured in other states such that it could be inferred that a substantial part of Plaintiffs' work related to interstate commerce. Moreover, Plaintiffs' alleged use of these items forms simply too marginal a relationship to constitute Plaintiffs' engagement in interstate commerce. *Id.* (holding that the plaintiff's use of vehicle manufactured outside of New York did not render him an employee engaged in commerce).

Second, Plaintiffs' allegation that they "routinely made important purchases of goods, equipment, and other materials either directly from states other than New York and/or for items that were manufactured in states other than New York" (AC ¶ 13) is insufficiently supported by facts to establish FLSA coverage. Purchases from out-of-state vendors are "sufficient to invoke

the protection of the FLSA unless they involve only 'sporadic and occasional shipments of insubstantial amounts of goods.' " *Boekemeier*, 86 F. Supp. 2d at 287 (quoting *Mabee v. White Plains Pub. Co.*, 327 U.S. 178, 181 (1946)). Here, Plaintiffs do not indicate the frequency or quantity of their purchases of goods from out-of-state vendors such that the Court could conclude that this activity was not occasional and was substantially related to their job duties. *Cf. id.*, at 283, 287-88 (holding that the plaintiff was an employee engaged in commerce under the FLSA because plaintiff purchased items important to defendant's activity between fourteen and thirty times over the course of approximately seven years). Moreover, Plaintiffs admit that they did not buy these items themselves, but submitted purchase orders to Aguilera who would in turn purchase the items. (AC ¶ 13.)

Finally, Plaintiffs' allegation that they "routinely had to make phone calls to companies located outside of New York" (AC ¶ 13) is also insufficient. Although employees engage in commerce when their duties require "regular and recurrent" telephone use for interstate communication, *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 465-66 (S.D.N.Y. 2006) (citing 29 C.F.R. §§ 776.10, 779.103), here Plaintiffs' allegation that the phone calls were "routine" is not sufficient. Plaintiffs fail to indicate the regularity of their interstate telephone calls or the substance and purpose of these calls, other than that they sometimes involved seeking technical support from out-of-state manufacturers of goods that Plaintiffs were using. Hence, the Amended Complaint alleges no facts to support the conclusion that Plaintiffs' use of interstate telephone calls was a substantial part of their work. Accordingly, Plaintiffs' FLSA claims are

9

dismissed.[4]  To the extent Plaintiffs wish to file amended claims, they must do so in accordance with the instructions below.

### III.  Plaintiffs' State Law Claims

Having dismissed Plaintiffs' FLSA claims, there is no longer any independent basis for federal jurisdiction in this action.  Pursuant to 28 U.S.C. § 1367(c)(3), the Court "may decline to exercise supplemental jurisdiction" over a state law claim when the Court "has dismissed all claims over which it has original jurisdiction."  The Second Circuit has repeatedly emphasized that when "federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."  *See Klein & Co. Futures, Inc. v. Bd. of Trade of the City of New York*, 464 F.3d 255, 262 (2d Cir. 2006); *see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  As discussed above, Plaintiffs' FLSA claims are dismissed thereby eliminating all of Plaintiffs' federal claims, and therefore, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted.  Accordingly, Plaintiffs' claims are dismissed without prejudice.  The Court notes that Plaintiffs have already

---

[4] Having dismissed the FLSA claims based on Plaintiffs' failure to plead either enterprise or individual coverage, the Court need not address Defendants' argument that the FLSA claims should be dismissed for Plaintiffs' failure to plead that they were paid less than minimum wage.

filed an Amended Complaint as a matter of right in this action. However, to the extent Plaintiffs wish to file a second amended complaint they must do so within thirty (30) days of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
       July 14, 2015

                                                                           /s/
                                                    Denis R. Hurley
                                                    United States District Judge